Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

Drew E. Pomerance (SBN 101239)
Anne S. Kelson (SBN 257851)
Jesse B. Levin (SBN 268047)
ROXBOROUGH, POMERANCE, NYE & ADREANI
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367
dep@rpnalaw.com
ask@rpnalaw.com
jbl@rpnalaw.com
Telephone: (818) 992-9999
Facsimile:  (818) 992-9991

*Attorneys for Plaintiffs Karen J. Reif and Isaac A. Nesmith,
individually and on behalf of others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| Karen J. Reif and Isaac A. Nesmith, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Rightscorp, Inc., a Nevada Corporation, formerly known as Stevia Agritech Corp.; Rightscorp, Inc., a Delaware Corporation; Christopher Sabec, an individual; Robert Steele, an individual; Craig Harmon, an individual; Dennis J. Hawk, an individual; and John Does 1 to 10, <br><br> Defendants. | Civil Case No.: _____ <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227); <br> (2) Violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*); <br> (3) Violations of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*); <br> (4) Abuse of Process (Under Federal and California Law); <br><br> **-AND-** <br><br> **DEMAND FOR TRIAL BY JURY** |

-1-

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Plaintiffs Karen J. Reif and Isaac A. Nesmith, individually and on behalf of others similarly situated ("**Plaintiffs**"), bring this class action complaint against defendants Rightscorp, Inc., a Nevada Corporation; Rightscorp, Inc., a Delaware Corporation (together, "**Rightscorp**"); Christopher Sabec; Robert Steele; Craig Harmon; Dennis J. Hawk; and John Does 1 to 10; and hereby allege as follows:

## NATURE OF THE CASE

1.    Rightscorp describes itself to investors as a "leading provider of monetization services" for copyright owners.

2.    In an effort to leverage "settlements" for purported claims of copyright infringement from consumers, Rightscorp has made extensive and repeated use of an automatic telephone dialing system and/or a prerecorded or artificial voice (a "**Robo-Caller**"), to call Plaintiffs on their cell phones, in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227) ("**TCPA**").

3.    Rightscorp is regularly engaged in the business of collecting on alleged obligations of consumers to pay money (i.e., debt collection) for purported copyright infringement claims, such that it is subject to the Fair Debt Collection Practice Act (15 U.S.C. § 1692 *et seq*.) ("**FDCPA**") and the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code §§ 1788 *et seq*.) ("**Rosenthal Act**").  However, Rightscorp has repeatedly and systematically failed to comply with the provisions of the FDCPA and the Rosenthal Act.  Among other wrongful conduct: Rightscorp has engaged in telephone harassment and abuse (15 U.S.C. § 1692d); made various false and misleading representations (15 U.S.C. § 1692e); engaged in unfair collections practices (15 U.S.C. § 1692f); failed to provide validation and required notices relating to the debts (15 U.S.C. § 1692g); and furnished emails and letters knowing they would create false beliefs on the parts of consumers that their Internet Service Providers ("**ISPs**") were participating in the attempt to collect on the purported debts when in fact the ISPs were not participating (15 U.S.C. § 1692f).

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

4.      Further, to identify potential consumers to target, Rightscorp has willfully misused this Court's subpoena power by issuing at least 142 special DMCA subpoenas, per 17 U.S.C. § 512(h), to various Internet Service Providers ("**ISPs**").  These subpoenas, which were issued on this Court's authority, but procured outside of an adversarial proceeding and without any judicial review, are so clearly legally invalid as to be a sham and abuse of the legal process.  After an ISP moved to quash one of these 142 subpoenas in the Western District of Texas, on September 10, 2014, Rightscorp withdrew that subpoena rather than risk judicial review of its plainly unlawful use of this Court's subpoena power.  *See* In re *Subpoena Issued to Grande Com'n. Net's., LLC*, W.D. Tx. No. 1:14-mc-00848, ECF No. 3, 9/10/14; *see also* id. at ECF No. 1, 9/5/14 (ISP's motion to quash). Nevertheless, since then, throughout the later part of September and through until the filing of this action, Rightscorp has continued to issue dozens of new, legally invalid DMCA subpoenas on this Court's authority (*see, e.g., In re Subpoena Issued to US Internet Corp.*, C.D. Cal. No. 2:14-mc-864-UA, 10/14/14).

5.      Accordingly, Plaintiffs pray for class relief against Rightscorp, including damages under the TCPA and FDCPA, punitive damages for abuse of process, in addition to compensatory and special damages, attorneys' fees, costs, and injunctive relief to stop Rightscorp's unlawful practices, including its continued issuance of sham DMCA subpoenas.

## PARTIES

6.      Plaintiff Karen J. Reif, who goes by "Jeanie" after her middle name, is an individual residing in Saginaw, Michigan.

7.      Plaintiff Isaac A. Nesmith is an individual residing in Beaumont, California.

8.      Defendant Rightscorp, Inc. is a Nevada Corporation with its headquarters and principal place of business located within the Western Division of this Judicial District at 3100 Donald Douglas Loop North, Santa Monica, CA 90405

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

("**Rightscorp Nevada**").  On information and belief, prior to July 15, 2013, Rightscorp Nevada was formerly known as Stevia Agritech Corp.

9.     Defendant Rightscorp, Inc. is a Delaware Corporation with its headquarters and principal place of business located within the Western Division of this Judicial District at 3100 Donald Douglas Loop North, Santa Monica, CA 90405 ("**Rightscorp Delaware**").  On information and belief, Rightscorp Delaware is a wholly owned subsidiary of Rightscorp Nevada.

10.     On information and belief, there existed and there continues to exist a unity of interest between Rightscorp Nevada and Rightscorp Delaware, such that any individuality and separateness between them has ceased, and the two companies are alter egos of one another.  On information and belief, one of the companies has complete control and domination over the business and financial dealings of the other company.  Adherence to the fiction of a separate existence of the two Rightscorp companies would be an abuse of limited liability protection and would promote injustice such that the two entities should be treated as one and the corporate veil between them should be pierced.

11.     Defendant Christopher Sabec, an individual, is the CEO of Rightscorp. On information and belief, he resides within the Central District of California.  Mr. Sabec is also an attorney.

12.     Defendant Robert Steele, an individual, is the CTO and COO of Rightscorp.  On information and belief, he resides within the Central District of California.

13.     Defendant Craig Harmon, an individual, is the General Counsel of Rightscorp.  On information and belief, he resides within the Central District of California.  Mr. Harmon is also an attorney.

14.     Together, Mr. Sabec, Mr. Steele, and Mr. Harmon are the "**Management Defendants**".

15.     Defendant Dennis J. Hawk, an individual, is an attorney who, like Rightscorp, also maintains his office at 3100 Donald Douglas Loop North, Santa Monica, CA 90405.  Mr. Hawk purports to be affiliated with the "Business Law Group".  Mr. Hawk signed and filed the "Declaration[s] Pursuant to 17 U.S.C. § 512(h)" that were used to obtain the clerk-stamped DMCA subpoenas that underlie the abuse of process claim, as more fully alleged below.

16.     John Does No. 1 to 10 are the "clients" of Rightscorp on whose behalf Rightscorp was acting, as an agent, in doing the wrongful acts alleged in this complaint.  The true identities of the John Doe defendants are presently unknown to Plaintiffs but can be ascertained through discovery.  Plaintiffs will amend the complaint to include the true names of the appropriate John Doe defendants after their identities have been ascertained.

17.     Together, Rightscorp, the Management Defendants, Dennis J. Hawk, and John Does No. 1 to 10 are the "**Defendants**".

## JURISDICTION AND VENUE

18.     This Court has federal question subject matter jurisdiction over the TCPA and FDCPA causes of action, which clearly arise under federal law, pursuant to 28 U.S.C. § 1331.  *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. ___, 132 S. Ct. 740, 747 (2012) (TCPA claims are subject to federal question jurisdiction).

19.     This Court also has federal question subject matter jurisdiction over the abuse of process cause of action, per 28 U.S.C. §§ 1331 and 1338, because "even though state law creates [Plaintiffs'] cause of action" for abuse of process, the cause of action still "'arise[s] under' the laws of the United States" because this "well-pleaded complaint establish[es] that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."  *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983).  Specifically, the adjudication of the abuse of process cause of action requires this Court to determine whether the 142 DMCA

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

subpoenas Rightscorp has issued comply with federal copyright law as enunciated at 17 U.S.C. § 512(h) *et seq.*, and whether this Court's federal legal process has been abused.

20.     In the alternative, this Court has supplemental subject matter jurisdiction over the abuse of process cause of action, per 28 U.S.C. § 1367, because the abuse of process is so related to the other federal claims as to form part of the same case or controversy under Article III of the U.S. Constitution.

21.     This Court has supplemental jurisdiction over the cause of action brought under the Rosenthal Act, per 28 U.S.C. § 1367(a), because the Rosenthal Act claims are so related to the federal claims, particularly the FDCPA claims, that they form part of the same case and controversy under Article III of the United States Constitution.

22.     This Court has personal jurisdiction over the defendants Rightscorp Nevada and Rightscorp Delaware because they have their principal headquarters in and regularly conduct business in the State of California.

23.     Each of the Management Defendants and Mr. Hawk have continuous and systematic contacts with the State of California, by virtue of their close involvement with Rightscorp, such that this Court has personal jurisdiction over them.  On information and belief, each of these individual defendants also resides within the State of California.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b)(1) and (b)(2), because Rightscorp resides in this judicial district, and a substantial part of the events giving rise to the claim, including the issuance of invalid subpoenas, the Robo-Calls, and other improper collections efforts, occurred in and originated from this judicial district.

25.     Assignment within this judicial district to the Western Division is appropriate, because defendant Rightscorp resides in Santa Monica, CA, which is in the Western Division.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

## COMMON FACTUAL ALLEGATIONS

### (a)   Background on Rightscorp's Copyright "Settlement" Business

26.   According to a September 2014 marketing presentation Rightscorp included in its Securities and Exchange Commission disclosures, Rightscorp describes its business as follows:

> "Rightscorp is a leading provider of monetization services for artists and holders of copyrighted Intellectual Property (IP). The Company has a patent-pending, proprietary technology for solving copyright infringement by collecting payments from illegal distributors via notifications sent to their Internet Service Providers (ISPs)."

27.   Rightscorp's "proven" solution to collect payments from "infringers" has four steps: "[1] Crawl P2P networks such as BitTorrent accessed by The Pirate Bay; [2] Send automated settlement offers to infringers via their ISPs for $20 per infringement vs. $150,000 legal liability per infringement if they do not settle; [3] Identify non-responsive repeat infringers; [4] ISPs can terminate repeat infringers to reduce ISP's potential liability."

28.   Rightscorp collects "daily payments from infringers accepting settlement offers" on which there is a "50/50 Split on collections to copyright holders."  Rightscorp claims to have "closed over 100,000 cases on 140+ ISPs to date;" it has "80,000+ copyrights active in our system;" and it "[r]ecently received approval to collect on over 1.5 million copyrights."

29.   According to Rightscorp's 2013 10-K report dated March 25, 2014, in the section that explains how revenue is recognized, Rightscorp "generates revenue from the sale of a service to copyright owners under which copyright owners retain the Company to identify and collecting [sic] settlement payments from Internet users who have infringed on their copyrights. Revenue is recognized when the ISP's subscriber pays the fee [.]"

30.   Also according to the 2013 10-K Report, one of the "touch points" for Rightscorp's "Growth Strategy" was to grow revenue, "[b]y increasing response

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

rates (the number of subscribers who have received notices and agree to settle.) We may seek to do this through public relations, through examples in the press of infringers who were sued by copyright owners, by improving the educational and motivational aspects of the notice, web site and payment process and by having ISP's terminate repeat infringers until they settle."

31.     Rightscorp further explained in its 2013 10-K that "[u]nder our business model, the copyright owner signs a simple agreement authorizing us to monitor the P2P networks and collect settlement payments on its behalf."

32.     Notably absent from Rightscorp's 10-K and from other similar securities filings is any claim that it has taken assignment to any copyrights, or secured an exclusive license to any of the copyrighted content in its "monetization system." Rather, Rightscorp's investor materials discuss threatening ISP subscribers with disconnection of their Internet service if they refuse to pay on claims for alleged infringement supposedly owed to third party content owners.

33.     Accordingly, Plaintiffs are informed and believe that Rightscorp is not the owner or exclusive licensee for any of the copyright rights that it has "ingested" into its "proprietary copyright monetization system."  Rather, Plaintiffs are informed and believe the copyright rights Rightscorp seeks to "monetize" are owned and/or exclusively licensed by third-party content creators who are Rightscorp's clients. Thus, Plaintiffs are informed and believe that Rightscorp actually has no standing or legal right to sue anyone for copyright infringement in relation to the copyrights it has "ingested" into its "monetization" system.

/ /

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

34.     Rightscorp emails settlement offer to consumers' ISPs, which Rightscorp asks the ISPs to forward to their subscribers.  Rightscorp's "**Sample Settlement Offer**" is described by Rightscorp in a slide from its September 2014 investor presentation, as follows:



36.     By clicking on a link that purports to redirect to a "secure" payment site, consumers who receive emails similar to the foregoing "Sample Settlement Offer" are invited to pay by credit card or other means to "settle" a copyright infringement claims against them.  As Rightscorp explains in its 2013 10-K,

> "The user who receives the notice reads that they could be liable for $150,000 in damages, but if they click on the link supplied, they can enter a credit card and they can will settle the matter between them and the copyright owner for $20 per music infringement."

/ /

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

**(b)**   **Jeanie Reif Contacted Rightscorp In Response To The Email Notice Forwarded by Her ISP, And Was Then Bombarded With Harassing Robo-Calls To Her Cellular Phone Made By Rightscorp**

37.   Plaintiff Jeanie Reif received a notice from her ISP, Charter Communications, similar to the Sample Settlement Offer pictured above in April of 2014.  The notice Ms. Reif received from Charter contained a forwarded email that Rightscorp had originally sent to Charter.

38.   Ms. Reif responded to the notice in or around April of 2014 by contacting Charter and Rightscorp to ask for more information about why she was getting the notice and the basis of the alleged claims that Rightscorp was asserting against her.

39.   Notably, Ms. Reif called Rightscorp, using her cellular telephone, to discuss the notice she had received via email from Charter.

40.   Starting around approximately July of 2014, Ms. Reif began receiving frequent, repeated telephone calls and voicemails from various different phone numbers associated with Rightscorp.  The calls from Rightscorp were placed both to Ms. Reif's home telephone number, and to her cellular telephone number.  Some of the calls were from human beings, including someone who identified herself as "Yaddy".  However, many of the calls were automated, such that the voicemails left by Rightscorp on Ms. Reif's phones utilized a repeating message delivered by what sounded like an artificial or pre-recorded voice.

41.   For example, on September 17, 2014, Ms. Reif received the following voice message (which sounded pre-recorded) on her cell phone:

> "This is an urgent message from Rightscorp regarding your Internet account.  We have evidence that one or more of our clients' copyrighted materials has been illegally distributed through your Internet connection in violation of U.S. Federal Law 17 U.S.C. 106.  To settle this urgent matter you can reach one of our agents by pressing any number on your phone keypad now.  Or, you can call us at 888-851-3801 between 8 a.m. and 8 p.m. Pacific Standard Time.  This urgent message is from Rightscorp."

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

42.     Ms. Reif received many other calls from Rightscorp to her cellular phone and her home phone that said similar things, both from what sounded like human collections agents, as well as the same automated message.  By late September of 2014, Ms. Reif was receiving on average about one robo-call per day, and sometimes one robo-call and one live call in the same day.  These calls came in from a variety of different numbers, from different area codes all over the country.

43.     Ms. Reif never gave "prior express consent" to receive autodialed or prerecorded calls from Rightscorp to her cellular phone or home phone.  Further, Ms. Reif never provided her cellular or home telephone numbers to the copyright owner creditors who Rightscorp purports to represent in connection with any underlying transaction.

44.     After requesting validation of the claims being asserted against her, which Rightscorp could not provide, Ms. Reif asked "Yaddy" at Rightscorp to stop calling her.  However, Rightscorp continued to call Ms. Reif.

**(c)    Rightscorp's Issuance of Special DMCA Subpoenas From This Court Per 17 U.S.C. § 512(h)**

45.     On August 14, 2014, attorney Dennis J. Hawk filed three case-initiating documents in the U.S. District Court for the Central District of California, in case number 2:14-mc-635-UA:

(a)     A "Declaration Pursuant to 17 U.S.C. § 512(h)[1]", a true and correct copy of which is attached hereto as **Exhibit A** (C.D. Cal. No. 14-mc-635-UA, ECF No. 1).  The declaration recited that Mr. Hawk was a California attorney "associated with Businesses Law Group ("Business Law Group"), counsel for Rightscorp, Inc. ("Rightscorp"), a representative of various copyright owners.  Business Law Group is authorized to act on behalf of Rightscorp and the copyright

---

[1] 17 U.S.C. § 512(h) was added to the Copyright Act by a subpart of the Digital Millennium Copyright Act of 1998 ("**DMCA**") called the Online Copyright Infringement Liability Limitation Act ("**OCILLA**").  Section 512 often is referred to as the "safe harbor" provision of the DMCA.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

owners it represents on matters involving infringement of their copyrighted sound recordings.  This declaration is made in support of the accompanying Subpoena. . ."

(b)     A "Notice of Lodging of Summary Spreadsheet and DMCA Notifications," a true and correct copy of which is attached hereto as **Exhibit B** (C.D. Cal. No. 14-mc-635-UA, ECF No. 2).  The notice specified that two documents were included on a CD lodged with the Court (but which are not available on PACER): (i) "Excel Summary Spreadsheet"; and (ii) "Notices from June 7, 2014 to August 6, 2014".

(c)     A "Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of  Premises in a Civil Action," a true and correct copy of which is attached hereto as **Exhibit C** (C.D. Cal. No. 14-mc-635-UA, ECF No. 3). The subpoena contained the Seal of the U.S. District Court for the Central District of California and was stamped by a deputy clerk as of August 14, 2014.  The subpoena was directed to Greenfield Communications, Inc. ("**Greenfield**") and demanded production of "Information, including name, address, telephone number, and email address sufficient to identify the alleged infringers of copyrighted sound recordings, identified by IP addresses in the notices attached as Exhibit A to this subpoena." No "Exhibit A" was actually attached to the version of the subpoena e-filed with this Court.  The subpoena demanded production of the requested information by September 15, 2014.

46.     On information and belief, Greenfield is an ISP based in Dana Point, California, that provides cable and fiber optic Internet services to residential Internet subscribers, and is not one of the nation's top ten largest ISPs.

47.     There are at least 141 other, similar sets of subpoena papers that Mr. Hawk has filed in the Central District of California on behalf of Rightscorp.  A PACER report showing each of Rightscorp's miscellaneous subpoena proceedings is attached hereto as **Exhibit D**.  As shown in that PACER report, Rightscorp began

-12-

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

initiating these miscellaneous actions on February 27, 2014, and has continued to file multiple new miscellaneous actions every month since then.

48.     On information and belief, each of the other miscellaneous actions initiated by Rightscorp in the Central District of California, including the actions listed in Exhibit D, are the same as the Greenfield subpoena action, in the following ways: (i) they all utilize the same or similar set of papers (Exhibits A to C), filed by Mr. Hawk on behalf of Rightscorp and its clients, excepting the different ISPs to which the subpoenas are directed; (ii) like Greenfield, each of the other ISP subpoena recipients are also smaller to medium sized ISPs; (iii) as in the Greenfield action, no adversary ever appeared in this Court to contest the subpoena or any other issues; (iv) as in the Greenfield action, no Judge of this Court was ever assigned to review the subpoenas (all the case numbers have a "UA" suffix); rather, the deputy clerk stamped the subpoena upon filing of the action, and the action was closed shortly thereafter; (v) as in the Greenfield action, the clerk-stamped subpoena recites that it is accompanied by an Exhibit A thereto, but no Exhibit A was e-filed on the Court's docket as an attachment to the subpoena.

49.     Rightscorp served the clerk-stamped subpoena, Exhibit C, on Greenfield, and Greenfield made a return on the subpoena to Rightscorp, thus providing personally identifiable information about the subscribers and transactional information about their Internet accounts to Rightscorp.  The total number of Greenfield subscribers who were targeted by the Greenfield subpoena and who were identified by Greenfield is presently unknown to Plaintiffs, because there was no Exhibit A to the subpoena filed on the public docket.

50.     On information and belief, each of the 142 ISPs targeted in the miscellaneous actions listed in Exhibit D have also been served by Rightscorp with clerk-stamped subpoenas issued to them, and some of these ISPs (exactly which ones is presently unknown to Plaintiffs) have made returns on those subpoenas, thus

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

providing personally identifiable information about the subscribers and transactional information about their Internet accounts to Rightscorp.

51.   On information and belief, Rightscorp's miscellaneous court actions that it used to issue 142 subpoenas, as identified in Exhibit D, have sought to obtain personally identifiable information and Internet transaction information for what probably totals, in aggregate, at least several thousand Internet subscribers in aggregate given all of the different ISPs targeted by Rightscorp with subpoenas. The total number of ISP subscribers targeted by Rightscorp in this manner may well exceed one hundred thousand people.

**(d)   All Of Rightscorp's 142 DMCA Subpoenas Are Invalid, And When Rightscorp Was Called On This In A Motion To Quash, It Withdrew The Challenged Subpoena, But Kept Issuing New Subpoenas Here**

52.   Like Greenfield, Grande Communications Networks, LLC ("**Grande**") was another of the many smaller to medium sized ISPs that was served with a 512(h) subpoena issued by Rightscorp on this Court's authority.  Exhibit D at p. 3 (C.D. Cal. No. 14-mc-627-UA).

53.    On September 5, 2014, Grande, which is based in Texas, through counsel who routinely represents larger national ISPs, moved to quash Rightscorp's 512(h) subpoena in the Western District of Texas.   *In re Subpoena Issued to Grande Comm'n. Net's., LLC*, W.D. Tx. No. 1:14-mc-00848, ECF No. 1, 9/5/14.

54.   Grande argued convincingly in its motion to quash Rightscorp's section 512(h) subpoena as follows,

> "It has been well-established for a decade that subpoenas may not be issued under 17 U.S.C. § 512(h) to ISPs merely acting as conduits for electronic communications. *In re Charter Commc 'ns, Inc.*, 393 F.3d 771, 776-78 (8th Cir. 2005) (finding that Section 5 12(h) does not authorize the issuance of subpoenas to ISPs acting as mere conduits for communications between Internet users and vacating order issued by district court enforcing improperly issued Section 512(h) subpoenas); *Recording Indus. Assoc. of Am. v. Verizon Internet Svcs., Inc.*, 351 F.3d

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

1229, 1236-39 (D.C. Cir. 2003) (Section 512(h) inapplicable where Internet service provider acted as conduit for alleged peer-to-peer file sharing between Internet users).

As the federal courts have explained, any request for the issuance of a subpoena under Section 512(h) must include a copy of a notification of claimed infringement" that must have been sent to the service provider, which notification must include: "Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 51 2(c)(3)(A), (h)(2)(A) (requiring "a copy of a notification described in subsection (c)(3)(A)" as a prerequisite to the issuance of a subpoena under Section 5 12(h)). This requirement plainly contemplates a situation where accused material is stored by a service provider in such a way that a copyright holder may notify such service provider of the accused infringing material and the location of that material, and the service provider may then remove the accused material or block access to the accused material. 17 U.S.C. § 512(c), (h).

The Section 512 notification-and-takedown process is inapplicable as to a conduit ISP, because the ISP could never "locate" a file that does not reside on its systems but rather was merely transmitted by the ISP. The "notifications" that Rightscorp presumably filed in this action are invalid, never resulted in any notice to subscribers, and could not serve the function required by the statute, as the courts have also explained. *See In re Charter Commc 'ns*, 393 F.3d at 777; *Verizon Internet Svcs.*, 351 F.3d at 1235-36 ("any notice to an ISP concerning its activity as a mere conduit does not satisfied the condition of § 51 2(c)(3)(A)(iii) and is therefore ineffective").

The reasoning of the federal appellate courts in *In re Charter* and *Verizon* has been uniformly adopted in the federal district courts. *See, e.g,* Order Granting in Part Mot. For Expedited Disc. and for Extension of Time to Serve Defs., at 2 n.1, *Combat Zone Corp. v. John/Jane Does 1-2*, 12-cv-0142 (N.D. Miss. Dec. 6, 2012), ECF No. 18 (noting that the issuance of a §512(h) subpoena to an ISP acting as a conduit is not supported by the statute);[2] *Interscope Records v. Does 1-7*, 494 F.Supp.2d 388, 391 (E.D. Va. Jul. 12, 2007); *In re Subpoena to University of North Carolina at Chapel Hill*, 367 F.Supp. 2d 945, 952-

---

[2] A copy of the *Combat Zone* decision was attached as an Exhibit to the ISPs motion to quash.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

56 (M.D.N.C. 2005) (providing extensive statutory analysis); *see also Maximized Living, Inc. v. Google, Inc.*, No. 1 1-cv-80061, 2011 WL 6749017, at *5..*6 (N.D. Cal. Dec. 22, 2011) (explicitly agreeing with the D.C. Circuit's decision in Verizon). Grande is not aware of any caselaw since the In re Charter and Verizon decisions that would support Rightscorp's issuance of a subpoena under 17 U.S.C. § 5 12(h) to an ISP acting as a mere conduit.

Because the Subpoena may not be properly issued to Grande under 17 U.S.C. § 512(h), it should be quashed as unduly burdensome, even without regard to the actual amount of burden that would be involved in complying. *See AF Holdings, LLC* [*v. Does 1-1,058*], 752 F.3d [990,] 995 (D.C. Cir. 2014) (where a subpoena "compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?"); *cf Compaq Computer Corp. v. Packard Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (noting that, "if the soughtafter [discovery is] not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon [a third party] would be by definition 'undue.") (emphasis in original).

*In re Subpoena Issued to Grande Comm'n. Net's.*, LLC, W.D. Tx. No. 1:14-mc-00848, ECF No. 1, 9/5/14 at pp. 4–6 (Grande's motion to quash). Grande also made other arguments about the burden of compliance, and lack of compliance with other legal requirements.

55. One business day after Grande's foregoing motion to quash was filed, Rightscorp withdrew its subpoena to Grande, via email. *See id*. at ECF No. 3-1, 9/10/14 (copy of the 9/8/14 email from Mr. Hawk withdrawing the subpoena). Mr. Hawk explained to Grande's attorney that,

"We are in receipt of your recent filing in Texas. Although we have had considerable success in obtaining compliance by ISP's across the country, it appears that you will counsel your clients to deny our client's requests which we believe are in full compliance with the DMCA. Accordingly, we will seek alternative remedies available to our client and hereby formally withdraw our subpoena.

Any questions, please feel free to contact our office." *Id*.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

56.     On September 10, 2014, Grande then filed an advisory to the Western District of Texas, explaining that Rightscorp had "made a hasty retreat" by withdrawing the subpoena via the above-described email, which was attached to the advisory as an exhibit.  *Id.* at ECF No. 3, 9/10/14.  Grande's advisory further noted that,

> "Under the circumstances, this Court or the U.S. District Court for the Central District of California may consider ordering Rightscorp and its counsel to show cause why they should not be sanctioned for misusing the federal court's subpoena powers.
>         . . . If Rightscorp believed it had a good faith basis for the Subpoena, it would have asserted its position before [the Texas] Court.[3]
>         But Rightscorp must know that its position and practice would not survive judicial review. If Grande had not challenged the Subpoena, Rightscorp would have improperly obtained the personally identifiable information of hundreds (or thousands) of Texas Internet subscribers using an invalid procedure, without the notice to any of them that would have followed from the court order that Rightscorp refused to seek to obtain, and without the slightest requirement of any showing to the California court whose signature Rightscorp improperly utilized.
>         It appears clear that Rightscorp and its counsel are playing a game without regard for the rules, and they are playing that game in a manner calculated to avoid judicial review. Hopefully, they will not be permitted to continue much longer." *Id.* at pp. 2–3.

57.     As detailed in Exhibit D, since beating the hasty retreat out of Texas on September 8, 2014 while being accused of sanctionable conduct in the issuance of 512(h) subpoenas, Mr. Hawk, on behalf of Rightscorp and its unidentified clients, has continued issuing new Section 512(h) subpoenas out of the Central District of California.  Indeed, as indicated on Exhibit D, dozens of new Section 512(h)

---

[3] As Grande argued in a footnote: "In all likelihood, if asked, Rightscorp and its counsel would not be able to identify a single instance in which they argued to a court in an adversarial proceeding that any of the numerous subpoenas issued by them to Internet service providers acting as a conduit is proper under 17 U.S.C. § 512(h)."

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

subpoenas have been issued by Rightscorp out of the Central District of California to various different ISPs since September 15, 2014.

58.     It further appears that Grande's fairly recent motion to quash a Rightscorp Section 512(h) subpoena is not the only instance of an ISP challenging a Rightscorp subpoena, only for Rightscorp to then give up without attempting to justify itself in a signed court pleading.  The first entry on <u>Exhibit D</u>, unlike all of the other entries which are from 2014, is *Telscape Comm's, Inc. v Rightscorp, Inc.*, 2:2012-cv-8833-JSF-(JCGx).  A review of that docket reveals that on October 15, 2012, Telscape Communications, Inc. ("**Telscape**") filed a motion to quash a Rightscorp Section 512(h) subpoena, raising many of the same arguments made more recently by Grande.  *Id.* at ECF No. 1.  Rightscorp failed to file an opposition, so, on November 8, 2012, Judge Fischer issued an order in which the Court "deem[ed] the lack of opposition to be consent to the motion," and thus granted Telscape's motion to quash.  *Id.* at ECF No. 12.

59.     On information and belief, like Grande and Telscape, every ISP listed in <u>Exhibit D</u> was acting merely as a "conduit" for the allegedly infringing data at issue such that issuing a Section 512(h) subpoena to each such ISP was legally invalid and a sham.   Accordingly, Mr. Hawk, Rightscorp and the Management Defendants (two of whom are lawyers) have known that it was objectively baseless to rely on Section 512(h) to issue these subpoenas, for the reasons explained by Grande and Telscape in their motion to quash, yet they have continued to issue them.

**(e)     Rightscorp Obtained Isaac Nesmith's Contact Information And Internet Transaction Data From Greenfield Using A DMCA Subpoena And Then Began Pressuring Mr. Nesmith to "Settle" His Infringement "Case"**

60.     Isaac Nesmith is a residential Internet customer of Greenfield, meaning that Greenfield is his ISP that provides his home Internet service.

61.     As previously noted, Rightscorp filed papers to issue a subpoena to Greenfield on August 14, 2014, and the subpoena demanded production of

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

subscriber information from Greenfield, including personally identifiable and transaction information associated with Mr. Nesmith's Internet account, by September 15, 2014.

62.     Rightscorp sent a letter to Mr. Nesmith at his home address (the one he had on file with Greenfield) dated September 18, 2014, a true and correct copy of which is attached hereto as **Exhibit E**.  The letter from Rightscorp stated that "We have evidence that your internet account was used to violate our clients' copyrights. Based on this evidence, your Internet Service Provider was sent notice of copyright infringement that we requested them to forward to you.  We did not hear from you so, we have obtained your name, address and phone number via subpoena."  The letter did not, however, identify the "client" on whose behalf Rightscorp purported to act.  The letter did mention two "tracks," which was presumably meant to mean two songs supposedly downloaded by someone using Mr. Nesmith's Internet connection, but it did not state who performed or composed the "tracks," or provide any indication of who owns the copyrights to them.

63.     On September 22, 2014, "Marina" from Rightscorp called Mr. Nesmith on his home phone and left him a voice message in which she stated, among other things, "I am the DMCA agent who is handling your unsettled copyright infringement case.  You can reach me at my direct line 310.405.0102."

64.     On or around October 6, 2014, "Marina" from Rightscorp called Mr. Nesmith again on his home phone and left him a voice message in which she stated,
> "Hi Isaac.  This is Marina contacting you from Rightscorp.  I've contacted you on one other occasion, the 22nd of September, in regards to your copyright infringement case.  You have two unsettled infringements at this point and we are contacting you on behalf of our client, which is the owner of this copyrighted material.  If you'd like to settle with them to receive a liability release to protect yourself against litigation, contact me immediately.  Otherwise, if we don't hear back from you sir, we will have to escalate the case.  We have obtained your information via subpoena against your internet service provider in regards to the federal law being broken.  My direct line is

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

310.405.0102. Again that direct line is 310. 405.0102. Thank you Isaac."

65. On around October 10, 2014, Mr. Nesmith called "Marina's" number and left her a message asking that Rightscorp stop calling him at home and mail him any documentation supporting the claims against him.

66. On or around October 10, 2014, about ten minutes after Mr. Nesmith's message to Rightscorp, "Marina" from Rightscorp called Mr. Nesmith back and left him a voice message on the home number he had just asked her to stop calling, in which she stated,

> "This message is for Isaac. This is Marina returning your call from Rightscorp. If you could give me a call back on my direct line, that number is 310.405.0102. I just wanted to let you know that I did receive your message. Number 1: we do have that authorization to continue contacting you with the settlement option. I will completely respect the fact that you don't want those calls gone to your home phone. That's completely fine. So if you'd let me know which number we have here that is your home phone, I have two numbers on record for you here, as well as in regards to sending the content, the evidence of infringement that was sent to your home already regarding the two separate file sharing incidents that occurred for the illegal distribution of Pearl and Not Like the Movies. So those two files are detailed in that spreadsheet that was sent over to you. That's the subpoena. So if you'd give me a call back, the settlement is just $40. That can close the case and get a liability release on behalf of our client, the copyright holder. Again, my number is 310.405.0102. Thank you Isaac."

67. On or around October 17, 2014, Mr. Nesmith received a voice message on his home telephone number stating,

> "Isaac Nesmith, this is Marina contacting you from Rightscorp. I have contacted you on numerous occasions now in regards to your unsettled copyright infringement case. I am the DMCA Agent who is handling the case, so you can contact me back on my direct line. That number is 310.405.0102. I do want to also want to let you know that we have obtained your information via subpoena against your internet service

provider in regards to federal law being broken on your internet service account.  In the event that we cannot contact you, we will have to proceed with escalation of this case, sir.  There is a $40 infringement settlement in order to close your case out and receive a liability release on behalf of our client, the copyright holder. Contact me immediately to 310.405.0102.  Again, Isaac, that number is 310.405.0102.  Thank you."

68.     On or around October 28, 2014, Mr. Nesmith received a voice message on his home telephone number stating,

"Isaac Nesmith, this is Marina contacting you from Rightscorp, Incorporated.  I am the DMCA Agent that you spoke with in regards to your unsettled copyright infringement case.  You have a total of two unsettled infringements.  We have obtained your information via subpoena against your internet service provider, Greenfield.  Contact me immediately to make the settlement payment of $40 to receive your legal release and close your case out.  310.405.0102.  Again that number is 310.405.0102.  Thank you."

69.     Other than the initial letter attached here as <u>Exhibit E</u>, which does not specify the "client" on whose behalf Rightscorp is purporting to act, the name of the artist(s) who composed or performed the "tracks" alleged to be infringed, or otherwise identify the copyright owner, Rightscorp has never sent Mr. Nesmith any other supporting documentation for the "unsettled copyright infringement case," for which it continues to seek payment from him.

70.     On information and belief, there is not nor has there ever been any case for copyright infringement filed by Rightscorp or any other entity in relation to Mr. Nesmith or any IP address associated with his Internet account.

71.     On November 12, 2014, "Marina," who identified herself as a "DMCA Agent" for Rightscorp, sent Mr. Nesmith an email giving him an "opportunity to settle these claims with the copyright holder."   The email stated, among other things, that, "Distributing these compositions violates US Federal Law 17 USC 106 which states that the copyright owner has the sole right to determine who may

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

distribute their copyrights to the public. More than 200,000 people have been sued for doing exactly this since 2010."

72.     On November 19, 2014, "Marina," who identified herself as a "DMCA Agent" for Rightscorp, again emailed Mr. Nesmith, stating "We are closing all escalated cases with a settlement on behalf of the copyright holder. Our records indicate you have been offered the settlement option on multiple occasions by DMCA Agents."  It also stated, among other things, "If you are not capable of settling the matter yourself please have your attorney send in a letter of representation immediately."

**(f)     Class Action Allegations**

73.     Ms. Reif brings the TCPA claims on behalf of a class of others similarly situated and defines the class as follows (the "**TCPA Class**"):

> All natural persons residing in the United States, who, during the period four years prior to the date of filing this action, Rightscorp called or caused to be called at their cellular telephone number(s), using: (i) an artificial or pre-recorded voice; and/or (ii) equipment with the capacity to dial numbers without human intervention.
>
> Excluded from this class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

/ /

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

74.     Plaintiffs bring the FDCPA and Rosenthal Act claims on behalf of a class of others similarly situated and define the class as follows (the "**FDCPA Class**"):

> All natural persons residing in the United States, who, during the period one year prior to the date of filing this action, Rightscorp sent or caused to be sent, in an attempt to collect an alleged debt owed to Rightscorp's clients: (i) an email notice in the form Rightscorp's "Sample Settlement Offer"; (ii) a letter in the form of <u>Exhibit E</u> attached hereto; and/or (iii) telephone calls using a pre-recorded or automated voice message in the form of the one Jeanie Reif received to her voicemail on September 17, 2014.
>
> Excluded from this class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

75.     Mr. Nesmith brings the Abuse of Process claims on behalf of a class of others similarly situated and defines the class as follows (the "**Abuse of Process Class**"):

> All natural persons residing in the United States who, during the period two years prior to the date of filing this action, were the target of a subpoena to their ISP, ostensibly authorized under 17 U.S.C. § 512(h), issued by Rightscorp, including each of those subpoenas listed in <u>Exhibit D</u> attached hereto, and: (i) their personal or transactional information was disclosed by their ISP to Rightscorp in connection such a subpoena; or (ii) they were sent notification(s) regarding such a subpoena.
>
> Excluded from this class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the class are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

76.     <u>Numerosity</u>.  For each of the three classes, i.e., the TCPA Class, the FDCPA Class, and the Abuse of Process Class (together, the "**Classes**"), there are so

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

many members of each class that joinder of all members of that class is impracticable.  On information and belief, there are likely at least one thousand members of each of the Classes.  The FDCPA Class may exceed one hundred thousand of members.

77.    <u>Commonality</u>.  Common questions of fact and law exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.  The predominant questions include:

(a)    Whether Rightscorp's telephone system constituted an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1);

(b)    The manner in which Rightscorp obtained the class members' cellular telephone numbers;

(c)    Whether Rightscorp's Robo-Caller system violated the TCPA;

(d)    Whether and to what extent the "clients"/creditors who hired Rightscorp as their "DMCA Agent," on whose behalf Rightscorp purported to be acting, are liable under the TCPA for Rightscorp's unlawful phone calls;

(e)    Whether the form email notices Rightscorp sent to class members violate the FDCPA and Rosenthal Act;

(f)    Whether the form letters Rightscorp mailed to class members violate the FDCPA and Rosenthal Act;

(g)    Whether the Robo-Caller messages Rightscorp called class members with violate the FDCPA;

(h)    Whether Rightscorp's issuance of special DMCA subpoenas to various ISPs, ostensibly per 17 U.S.C. § 512(h), was a willful and improper use of the legal process done for an improper purpose; and

(i)    Whether and to what extent the "clients"/copyright owners who hired Rightscorp as their "DMCA Agent," on whose behalf Rightscorp purported to be acting, are liable on the abuse of process claim against Rightscorp.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

78.   <u>Typicality</u>.  Ms. Reif's claims are typical of the claims of the other members of the TCPA Class and the FDCPA Classes.  Mr. Nesmith's claims are typical of the claims of the other members of the Abuse of Process Class and the FDCPA Class.  Plaintiffs are not different in any relevant way from any other members of each of the respective Classes they represent, and the relief sought is common to each Class member.

79.   <u>Adequate Representation</u>.  Plaintiffs have agreed to and will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' interests do not conflict with the interests of the other members of the Classes.  Plaintiffs have retained counsel who are competent and experienced in complex class actions, and who are knowledgeable about copyright enforcement and the DMCA.

80.   <u>Rule 23(b)(2) Certification: Injunctive Relief</u>.  As required by Fed. R. Civ. P 23(b)(2), the Classes are appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as wholes. The policies of the Defendants challenged herein apply and affect members of the Classes uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.  Further, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and the members of the Classes for which they have no adequate remedy at law.

81.   <u>Rule 23(b)(3) Certification: Predominance and Superiority</u>.  As required by Fed. R. Civ. P. 23(b)(3), the Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by each member of the Classes will likely be relatively small,

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for members of the Classes to individually obtain effective relief from Defendants' misconduct. Even if members of the Classes themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION

**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227)**

**By Ms. Reif Individually And On Behalf of the TCPA Class**

**Against Rightscorp, the Management Defendants, and John Does 1 to 10**

82.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83.     As relevant here, the TCPA prohibits Defendant from making telephone calls "using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

84.     "Automatic telephone dialing system" refers to any "equipment which has the capacity … (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC, charged with adopting rules implementing the TCPA, has clarified that an automatic telephone dialing system ("**ATDS**") includes predictive dialers and any other equipment that has "the ***capacity*** to dial numbers without human intervention." *See* <u>*Meyer v. Portfolio Recovery Assocs., LLC*</u>, 707 F.3d 1036,

1043 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2361 (May 13, 2013) (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 FCC Order")) (emphasis in original).

85.     Rightscorp used an artificial and/or prerecorded voice in calls to the cellular telephones of Ms. Reif and the other members of the TCPA Class, such as the call made to Ms. Reif's cell phone by a pre-recorded voice on September 17, 2014.

86.     On information and belief, Rightscorp caused equipment having the capacity to dial numbers without human intervention to be used to make telephone calls to the cellular telephones of Ms. Reif and the other members of the TCPA Class.

87.     Rightscorp has, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA.

88.     On information and belief, the violations of Section 227(b)(1)(A)(iii) of the TCPA alleged here were done willfully and knowingly on the part of Rightscorp and the Management Defendants.

89.     As a result of Rightscorp's conduct and pursuant to Section 227(b)(3) of the TCPA, Ms. Reif and the other members of the Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation, and a maximum of treble that amount if the Court determines that Rightscorp's violation of the TCPA was willful or knowing. *See* 47 U.S.C. § 312(f)(1).

90.     On information and belief, Rightscorp's use of autodialed and prerecorded voice calls to cellular telephones is ongoing.

91.     Plaintiffs bring this action as private attorneys general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

92.     On information and belief, each of the Management Defendants manage and work at Rightscorp and had direct personal participation in or personally authorized the actions by Rightscorp that violate the TCPA.  *See Jackson's Five Star Catering, Inc. v. Beason*, No. 10-CV-10010, 2012 WL 3205526, at *6 (E.D. Mich. July 26, 2012) ("many courts have held that corporate actors can be individually liable for violating the TCPA 'where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'''"); *quoting, inter alia, Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

93.     John Does No. 1 to 10 are the "clients" of Rightscorp, on whose behalf Rightscorp was acting as a "DMCA Agent", when Rightscorp made the autodialed and prerecorded phone calls that are unlawful under the TCPA.  Rightscorp was acting as the actual and ostensible agents of John Does No. 1 to 10, who were the creditors on the alleged debt Rightscorp was trying to collect, in making the unlawful phone calls.  Under the TCPA, "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559 ¶ 10 (December 28, 2007) ("2008 FCC Order"); *see also Hartley-Culp v. Green Tree Servicing, LLC*, 2014 U.S. Dist. LEXIS 145851, 6-7 (M.D. Pa. Oct. 10, 2014) (citing 2008 FCC Order and concluding that Fannie Mae was directly liable for TCPA violations committed on its behalf and citing cases holding traditional vicarious liability is also possible under TCPA); *citing, inter alia, Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (vicarious liability available under TCPA); *accord Gomez v. Campell-Ewald Co.*, __ F.3d __, No. 13-55486  (9th Cir. September 19, 2014) (holding that third-party marketing consultant who did not actually make any calls was vicariously under principles of agency).  Accordingly, John Does No. 1 to 10, whose exact identities are presently unknown, but who can be identified in discovery, are liable for Rightscorp's TCPA

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

violations in this case.  It is possible, if not likely, that Rightscorp has more than ten clients who fit into this category.

94.   WHEREFORE, on this cause of action, Ms. Reif both individually and on behalf of the TCPA Class, prays for statutory damages in the amount of at least $500 per violation of the TCPA, trebled for willfulness; plus attorney's fees and costs; for preliminary and permanent injunctive relief to stop Rightscorp from making further unlawful autodialed and prerecorded calls to cellular telephones; and for such other relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

**Violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*)**
**By Ms. Reif and Mr. Nesmith Individually And On Behalf of the FDCPA Class**
**Against Rightscorp and the Management Defendants**

95.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

96.   Under the FDCPA, "'debt' means any obligation or alleged obligation of a consumer[4] to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  Here, Rightscorp sent Plaintiffs and other members of the FDCPA Class notices of an alleged obligation to pay money arising out of an allegedly infringing BitTorrent download done by consumers for a personal, family or household purpose.  Accordingly, the claims for alleged copyright infringement Rightscorp seeks to monetize qualify as  "debts" as defined under the FDCPA.

97.   Under the FDCPA, "'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal

---

[4] Under the FDCPA, "'consumer' means any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ." 15 U.S.C. § 1692a(6).  Here, Rightscorp uses telephones and the Internet in connection with its business, the principal purpose of which is monetizing claims for infringement, i.e., collecting "debts," as defined under the FDCPA. Accordingly, Rightscorp is a "debt collector" as defined under the FDCPA.

98.    Under the FDCPA, as relevant here, "'creditor' means any person. . .to whom a debt is owed." 15 U.S.C. § 1692a(4).  Here, Rightscorp's "clients," including John Does 1 to 10, are the creditors to whom consumer debts, *i.e.*, alleged obligations to pay for copyright infringement, are owed.

99.    Under the FDCPA, "causing a telephone to ring and engaging a person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is unlawful. 15 U.S.C. § 1692d(5).  Here, Rightscorp has repeatedly called Plaintiffs and the other members of the FDCPA class by telephone with intent to annoy, abuse or harass.

100.  Under the FDCPA, any "threat to take any action that cannot legally be taken or that is not intended to be taken" is unlawful.  15 U.S.C. § 1692e(5).  Here, Rightscorp has threatened Plaintiffs and other members of the FDCPA Class that if they do not pay Rightscorp a "settlement," their "case" will be "escalated." Rightscorp has threatened Plaintiffs and other members of the FDCPA Class that if they do not pay settlements, their Internet connections will be disconnected. However, on information and belief, disconnection of consumers' Internet connections is not an action that could have been legally taken nor was it intended to be taken. Rightscorp has also suggested, both implicitly and sometimes explicitly that if consumers fail to pay, Rightscorp will sue them for infringement.  However, on information and belief, Rightscorp is not legally able to sue Plaintiffs and other members of the FDCPA Class for copyright infringement, because Rightscorp owns no exclusive copyright rights.  Further, at the time these threats were made and

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

continuing through until the filing of this action, on information and belief, Rightscorp's clients did not actually intend to sue Plaintiffs and other members of the FDCPA Class for copyright infringement.  In addition, on information and belief, one thing Rightscorp meant when it threatened to "escalate" a "case" is that the consumer it is attempting to collect the debt from would become the target of a DMCA subpoena.  However, as alleged herein, including in the fourth cause of action, such subpoenas are legally invalid, so Rightscorp's threats (which it has apparently been following through on) to take this unlawful are also actionable under the FDCPA.

101.   Under the FDCPA, "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is unlawful.  15 U.S.C. § 1692e(10).  Here, Rightscorp has made false representations and employed deceptive means to attempt to collect on the alleged infringement claims.  For example, Rightscorp threatened Plaintiffs and other members of the TCPA Class with having their Internet connections disconnected, but, on information and belief, few if any ISPs have ever disconnected anyone's Internet connection at Rightscorp's insistence. As another example, Rightscorp has told Plaintiffs and other members of the FDCPA Class that its clients, including John Does 1 to 10, "will pursue every available remedy including injunctions and recovery of attorneys' fees, costs, and any and all other costs which are incurred. . .as a result of any action that is commenced against you."  On information and belief, Rightscorp's "clients" have *never* pursued such remedies against the consumers Rightscorp is harassing with debt collection phone calls and emails, nor did Rightscorp's clients intend to do so when the threat was made or at any point prior to the filing of this action. Similarly, Rightscorp repeatedly references "cases" which suggests that there are already court cases pending for copyright infringement, but, on information and belief, there have never been any such court cases filed against Plaintiffs and the FDCPA Class.  As another example, Rightscorp's CEO

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

swears under penalty of perjury in email notices to Plaintiffs and other members of the FDCPA class that he is "authorized to act on behalf of the owner of the exclusive rights that have been infringed. While [a Rightscorp client] is entitled to monetary damages from the infringing party under 17 U.S.C. Section 504, The [Rightscorp client] believes that it may be expeditious to settle this matter without the need of costly and time-consuming litigation."   This suggests that Rightscorp is authorized to sue people for infringement and to settle such claims, when, on information and belief, Rightscorp is only authorized to file DMCA takedown notices and lacks sufficient copyright rights such that Rightscorp itself cannot sue anyone for infringement of its clients' works.  As yet another example, on information and belief, Rightscorp's Robo-Caller as well as the human debt collection agents use false and/or "spoofed" telephone numbers that list different numbers from different area codes all over the country in order to disguise who is really calling.

102.  Under the FDCPA, "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector," is unlawful.  15 U.S.C. § 1692(e)(11).  Here, Rightscorp has not disclosed in its initial communications with Plaintiffs and other members of the FDCPA Class that Rightscorp is a debt collector and that it may use information provided to it to try and collect on the infringement claims of its clients.

103.  Under the FDCPA, a debt collector is required to timely send Plaintiffs written notice containing certain required information including information regarding the right and time to dispute the debt, right to validation of the debt, and right to the name and address of the original creditor.  15 U.S.C. § 1692g(a)(2)–(5).

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

Here, Rightscorp has not timely sent Plaintiffs and other members of the FDCPA Class the required written notice containing all of this required information.

104.  Under the FDCPA, "It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). Here, Rightscorp has designed, compiled and furnished form emails and letters that it knew would be used to create the false belief by the Plaintiffs and other members of the FDCPA Class that their ISPs were participating in Rightscorp's attempted collection of the debts allegedly owed to it clients, by supposedly agreeing to disconnect their Internet service if they failed to pay, when in fact the ISPs were not participating in Rightscorp's debt collection as Rightscorp suggested.  In addition to Rightscorp itself, any individual or third party who designed Rightscorp's form emails and letters may be liable for violating this section of the FDCPA.  *See* 15 U.S.C. § 1692j(b).

105.  Under the FDCPA, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Similarly, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Here, Rightscorp's use of automated and prerecorded phone calls in violation of the TCPA constitutes an unfair, unconscionable, harassing, oppressive, and abusive means of attempting to collect the debts allegedly owed by Plaintiffs and other members of the FDCPA Class to Rightscorp's clients.

106.  On information and belief, Rightscorp is not registered with the State Bar of California as a law firm.  On information and belief, Rightscorp's "DMCA Agent" / debt collectors such as "Yaddy" and "Marina" are not licensed as attorneys in any state.  On information and belief, Rightscorp, through its non-attorney

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

"DMCA Agent" / debt collectors, is engaged in the unlicensed practice of law in that it not only seeks to collect debts, but it has effectively threatened Plaintiffs and other members of the FDCPA class with legal claims on behalf of its "clients."  This also constitutes an "unfair and unconscionable means to attempt to collect any debt."

107.    Thus, Rightscorp has violated 15 U.S.C. §§ 1692d(5), 1692e(5), 1692e(10), 1692(e)(11), 1692g(a)(2)–(5), 1692j(a), 1692f, and 1692d.

108.    As a result of Rightscorp's violations of the FDCPA, Plaintiffs and other members of the FDCPA Class were harmed and each are entitled to an award of damages, costs and attorneys' fees under the FDCPA. 15 U.S.C. § 1692k.

109.    On information and belief, Rightscorp's FDCPA violations are ongoing.

110.    On information and belief, each of the Management Defendants are "high ranking employee, executive, or director[s]" of Rightscorp who were personally involved in the collection of the debt from Plaintiffs and other members of the FDCPA Class.  *See Castro v. Green Tree Servicing, LLC*, 959 F. Supp. 2d 698, 706 (S.D.N.Y. 2013) (citing cases explaining when a person working at a debt collector can be personally liable for FDCPA violations).  Accordingly the Management Defendants are personally liable for Rightscorp's FDCPA violations in this case.

111.    WHEREFORE, on this cause of action, Plaintiffs both individually and on behalf of the FDCPA Class, pray for an award of damages and for costs and attorneys' fees as provided under 15 U.S.C. § 1692k; for preliminary and permanent injunctive relief to stop Rightscorp from continuing to violate the FDCPA; and for such other relief as the Court deems just and proper.

/ /

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

## THIRD CAUSE OF ACTION

**Violations of the Rosenthal Act (Cal. Civ. Code § 1788 *et seq.*)**

**By Ms. Reif and Mr. Nesmith Individually And On Behalf of the FDCPA Class**

**Against Rightscorp and the Management Defendants**

112.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

113.   Rightscorp's violations of 15 U.S.C. §§ 1692d(5), 1692e(5), 1692e(10), 1692j(a), 1692f, and 1692d are also all separately actionable under California's debt collection law, the Rosenthal Act, which incorporates some (but not all)[5] provisions of the FDCPA by reference.  Cal Civ. Code § 1788.17.

114.   Separately and in addition, under the Rosenthal Act itself, "(i) The false representation of the true nature of the business or services being rendered by the debt collector; [and] (j) The false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made" are unlawful.  Cal. Civ. Code § 1788.12(i)–(j). Here, on information and belief, Rightscorp has misrepresented the true nature of its business services by attempting to collect on clams for infringement, when in fact it is merely a DMCA agent, in violation of the Rosenthal Act.  Similarly, Rightscorp has falsely represented that a legal proceeding has been and/or will be instituted unless payment of the alleged debt is made, again in violation of the Rosenthal Act.

115.   Remedies available under the Rosenthal Act are cumulative to those available under the FDCPA. *See Gonzales v. Arrow Financial Services, LLC*, 660 F. 3d 1055, 1067–68 (9th Cir. 2011).

116.   As a result of Rightscorp's violations of the FDCPA and the Rosenthal Act, Plaintiffs and other members of the FDCPA Class were harmed and each are

---

[5] Notably, as relevant here, the so-called "mini-Miranda" notice required by 15 U.S.C. § 1692e(11) and the debt validation requirements of 15 U.S.C. § 1692g are specifically omitted from coverage under the Rosenthal Act.  Cal Civ. Code § 1788.17.

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

entitled to an award of damages, costs and attorneys' fees under the Rosenthal Act. Cal. Civ. Code §§ 1788.17, 1788.30; 15 U.S.C. § 1692k.

117.   On information and belief, Rightscorp's Rosenthal Act violations are ongoing.

118.   On information and belief, each of the Management Defendants are "high ranking employee, executive, or director[s]" of Rightscorp who were personally involved in the collection of the debt from Plaintiffs and other members of the FDCPA Class.  *See Castro v. Green Tree Servicing, LLC*, 959 F. Supp. 2d 698, 706 (S.D.N.Y. 2013) (citing cases explaining when a person working at a debt collector can be personally liable for FDCPA violations).  Accordingly the Management Defendants are personally liable for Rightscorp's Rosenthal Act violations in this case.

119.   WHEREFORE, on this cause of action, Plaintiffs both individually and on behalf of the FDCPA Class, pray for an award of damages and for costs and attorneys' fees as provided under 15 U.S.C. § 1692k and the Rosenthal Act; for preliminary and permanent injunctive relief to stop Rightscorp from continuing to violate the Rosenthal Act; and for such other relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

**Abuse of Process (Under Federal and California Law)**

**By Mr. Nesmith Individually And On Behalf of the Abuse of Process Class**

**Against All Defendants**

120.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

121.   Dennis Hawk averred in his sworn declarations that he used to obtain the 142 DMCA subpoenas listed in Exhibit D that he was "authorized to act on behalf of Rightscorp and the copyright owners it represents on matters involving infringement of their copyrighted sound recordings."  The issuance of these clerk-

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

stamped subpoenas from this Court after filing a miscellaneous DMCA action constitutes a use of the legal process.

122.   Mr. Hawk, acting on behalf of both Rightscorp and John Does No. 1 to 10, intentionally used the special DMCA subpoena procedure to issue subpoenas that are legally invalid.  Mr. Hawk did this for an improper purpose, namely to obtain personally identifiable information for members of the Abuse of Process Class, that Rightscorp could then use as grist for its national "settlement" mill.  On information and belief, Mr. Hawk and the Management Defendants knew before they began issuing them that the subpoenas were legally invalid because the ISPs they were issuing them to were "merely conduits" as defined under all of the applicable law interpreting the DMCA.  However, certainly by no later than September 5, 2014, when Grande filed its motion to quash in Texas, Mr. Hawk was fully informed that the DMCA subpoenas he had issued were legally invalid.  On information and belief, Rightscorp and the Management Defendants were also aware of Grande's motion in Texas, and they instructed Mr. Hawk to withdraw the subpoena to Grande because they knew it was legally invalid under all current legal precedent.  Nevertheless, since withdrawing the subpoena to Grande in early September of 2014 (which Rightscorp did without arguing for a change in the law), Mr. Hawk, on behalf of Rightscorp and John Does No. 1 to 10, has continued to issue dozens of new legally invalid subpoenas from this Court.

123.   Mr. Nesmith and the other members of the Abuse of Process Class were harmed by Mr. Hawk's abuse of the legal process.  Mr. Nesmith's personal information was released by his ISP to Rightscorp, resulting in him receiving a barrage of harassing and unlawful debt collection communications.  In addition, transactional information about the Internet accounts belonging to Mr. Nesmith was improperly disclosed to Rightscorp, which violated his right of privacy.  On information and belief, the other members of the Abuse of Process class whose information was actually disclosed by their ISPs suffered similar harms.  In addition,

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

when Mr. Nesmith and the members of Abuse of Process Class (including those members of the class whose ISPs never made a subpoena return) were notified of Rightscorp's DMCA subpoenas targeting their personal and transactional information, this caused them emotional distress, aggravation and stress.

124.   Mr. Hawk's issuance of the legally invalid DMCA subpoenas was a substantial factor in causing the harm to Mr. Nesmith and the other members of the Abuse of Process Class.

125.   The legal basis for the DMCA subpoenas issued by Rightscorp, including all of the subpoenas listed on Exhibit D, was objectively baseless in the sense that no reasonable litigant in Rightscorp's position could expect success on the merits.  Further, Mr. Hawk, the Management Defendants, and Rightscorp also had an improper subjective, ulterior purpose in issuing the DMCA subpoenas, which was to try and obtain information it could use to leverage "settlements" of claims that none of them had any right to bring in the first place.  The objective lack of merit to Rightscorp's position on the DMCA subpoenas was compounded by the fact that when Rightscorp was presented with an opportunity in the Grande case in Texas to potentially argue for a change or extension of the law, it declined to attempt to make such an argument, but then kept on issuing subpoenas it knew were invalid under the current law.

126.   Mr. Hawk, Rightscorp, and the Management Defendants acted with oppression fraud and malice in abusing the legal process.  Accordingly, Mr. Nesmith and the other members of the Abuse of Process Class are entitled to exemplary and punitive damages.  Cal. Civ. Code § 3294.

127.   Since Mr. Hawk purported to be and was ostensibly acting as an agent not only on Rightscorp's behalf, but also on behalf of undisclosed "client" principals, when he issued the invalid subpoenas, both Rightscorp and John Does No. 1 to 10 are vicariously liable for the tort their agent, Mr. Hawk, committed.  On information and belief, in addition to being an ostensible agent, Mr. Hawk may have

been the DMCA actual agent of John Does No. 1 to 10 when he issued the legally invalid subpoenas.

128.   On information and belief, the Management Defendants conspired with Mr. Hawk in issuing the legally invalid subpoenas; they were aware he was issuing the legally invalid subpoenas; they agreed with him and intended that he issue them; and they directed Mr. Hawk's efforts in this regard.  Accordingly, the Management Defendants are also liable for Mr. Hawk's abuse of the legal process.

129.   WHEREFORE, on this cause of action, Plaintiffs individually and on behalf of the Abuse of Process Class, pray for an award of damages and costs, as well as punitive and exemplary damages; for preliminary and permanent injunctive relief prohibiting Mr. Hawk and Rightscorp from continuing to issue legally invalid DMCA subpoenas; and for such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF ON COMPLAINT

NOW, THEREFORE, Plaintiffs, both individually and on behalf of all three Classes, pray that the Court enter judgment in their favor and against Defendants, and issue orders, as follows:

A.   Order certifying each of the Classes, directing that this case proceed as a class action, and appointing Plaintiffs and their counsel to represent each of the Classes;

B.   Award of damages to Ms. Reif and the other members of the TCPA Class in the amount of $1,500 per violation of the TCPA, as proven at trial;

C.   Award of damages to Plaintiffs and the other members of the FDCPA Class as provided under Section 1692k of the FDCPA, and pursuant to Cal. Civ. Code §§ 1788.17, 1788.30, for an amount of at least $1,000 per violation of the FDCPA and Rosenthal Act, as proven at trial;

D.   Award of damages to Mr. Nesmith and the other members of the Abuse of Process Class, including punitive and exemplary damages, for the abuse of the legal process, as proven at trial;

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

E.      Award of attorney's fees and costs to Plaintiffs and all the Classes on the first, second, and third causes of action for TCPA, FDCPA and Rosenthal Act violations;

F.      Order for preliminary and permanent injunctive relief prohibiting Defendants from continuing to issue legally invalid DMCA subpoenas, ostensibly pursuant to 17 U.S.C. § 512(h), to ISPs that are mere conduits, and from continuing to violate the TCPA, FDCPA and Rosenthal Act; and

G.      For such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

DATED: November 21, 2014


THE PIETZ LAW FIRM                    ROXBOROUGH, POMERANCE, NYE & ADREANI


*/s/ Morgan E. Pietz*                    */s/ Drew E. Pomerance*

Morgan E. Pietz (SBN 260629)        Drew E. Pomerance (SBN 101239)
THE PIETZ LAW FIRM                  Anne S. Kelson (SBN 257851)
3770 Highland Avenue, Suite 206     Jesse B. Levin (SBN 268047)
Manhattan Beach, CA 90266           ROXBOROUGH, POMERANCE, NYE & ADREANI
mpietz@pietzlawfirm.com             5820 Canoga Avenue, Suite 250
Telephone: (310) 424-5557           Woodland Hills, CA 91367
Facsimile:  (310) 546-5301          dep@rpnalaw.com
                                    ask@rpnalaw.com
                                    jbl@rpnalaw.com
                                    Telephone: (818) 992-9999
                                    Facsimile:  (818) 992-9991


*Attorneys for Plaintiffs Karen J. Reif and Isaac A. Nesmith,*
*individually and on behalf of others similarly situated*

-40-

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**