Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

Drew E. Pomerance (SBN 101239)
Anne S. Kelson (SBN 257851)
Jesse B. Levin (SBN 268047)
ROXBOROUGH, POMERANCE, NYE & ADREANI
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367
dep@rpnalaw.com
ask@rpnalaw.com
jbl@rpnalaw.com
Telephone: (818) 992-9999
Facsimile:  (818) 992-9991

*Attorneys for Plaintiff John Blaha,*
*Individually and on Behalf of Others Similarly Situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Blaha,* individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Rightscorp, Inc., a Nevada corporation, f/k/a Stevia Agritech Corp.; Rightscorp, Inc., a Delaware corporation; Christopher Sabec; Robert Steele; Craig Harmon; Dennis J. Hawk; BMG Rights Management (US) LLC; Warner Bros. Entertainment Inc.; and John Does 1 to 10,<br><br>Defendants.<br><br>[*Previously captioned with Karen J. Reif and Isaac Nesmith as lead plaintiffs] | Case No.: 2:14-cv-9032-DSF-(JCGx)<br><br>Assigned to: Hon. Dale S. Fischer<br>United States District Judge<br><br>Referred to: Hon. Jay C. Gandhi<br>United States Magistrate Judge<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2); DECLARATIONS OF MORGAN E. PIETZ AND JESSE B. LEVIN**<br><br>[Filed Concurrently with: (i) Declaration Of Morgan E. Pietz Regarding |

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT
TO FRCP 12(b)(2)

Authentication Of Exhibits Subject To Request For Judicial Notice; and (ii) Request For Judicial Notice In Support Of (1) Plaintiff's Opposition To Defendants' Motion To Strike Second Cause Of Action And Motion To Dismiss; And (2) Plaintiff's Opposition To Defendant Harmon's Motion To Dismiss]

DATE:           May 11, 2015
TIME:           8:30 a.m.
COURTROOM:   840

Complaint Filed:   November 21, 2014
Trial Date:        Not yet set

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

# TABLE OF CONTENTS

I.     INTRODUCTION  ............................................................1

II.    FACTUAL BACKGROUND  ...........................................2

III.   ARGUMENT  ................................................................4

    A.   The Court Has Specific Jurisdiction Over Harmon ..........................4

        1.   Harmon Purposefully Directed His Activities Into California As General Counsel And A Member Of Rightscorp's Executive Management Team ................................................5

            a.   The Purposefully Directing Or "Effects" Test Applies To TCPA Cases .........................................10

            b.   Specific Jurisdiction Exists Over Officers Of Corporations Who Purposefully Direct Activities To The Forum State  ......................................11

        2.   Harmon Purposefully Availed Himself of the Privilege of Managing and Counseling Rightscorp's California Business  ............................................................12

    B.   The TCPA and Abuse of Process Claims Arise Out of Harmon's Activities in Managing and Advising Rightscorp In California  .........................................13

    C.   The Exercise of Jurisdiction Is Reasonable .....................................14

IV.    CONCLUSION  ............................................................17

DECLARATION OF MORGAN E. PIETZ  .........................................18

DECLARATION OF JESSE B. LEVIN ..............................................20

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Baker v. Carribean Cruise Line, Inc.*, 2014 WL 880634
(D.Ariz. Mar. 6, 2014) ........................................................................ 10

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................... 16

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................... 5, 6, 8

*Caruth v. Int'l Psychoanalytical Ass'n*,
59 F.3d 126 (9th Cir. 1995) ......................................... 4, 9, 13, 14, 16

*Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ............. 15

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
557 F.2d 1280 (9th Cir. 1977) ........................................................... 4

*Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir 1989) .......... 11

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ....... 5, 6, 8

*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*,
784 F.2d 1392 (9th Cir. 1986) ........................................................ 6, 15

*Heidorn v. BDD Marketing & Mgmt. Co.*, 2013 WL 6571629
(N.D.Cal. Aug. 19, 2013) ................................................................. 10

*Hudak v. Berkeley Group, Inc.*, 2014 WL 354676
(D.Conn. Jan. 23, 2014) ................................................................... 10

*j2 Global Communications, Inc. v. Blue Jay, Inc.*,
2009 WL 29905 at *9 (N.D.Cal. 2009) ............................................ 11

*Jackson's Five Star Catering, Inc. v. Beason*,
2012 WL 3205526 at *6 (E.D. Mich. July 26, 2012) ........................ 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ..................................6, 11

*Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987) .....................................4, 5, 9, 13, 14

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
647 F.3d 1218 (9th Cir. 2011) ...........................................................................5

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ............................4

*Openwave Systems Inc. v. Fuld*,
2009 WL 1622164 (N.D.Cal. 2009) ...................................................................11

*Retail Software Services, Inc. v. Lashlee*,
854 F.2d 18 (2nd Cir. 1988) ..............................................................................13

*Sinatra v. National Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ...........................................................................12

*Smith Noble L.L.C. v. South Jersey Vinyl Inc.*,
47 U.S.P.Q.2d 1944 (C.D.Cal. 1998) ................................................................12

*Texas v. Am. Blastfax*, 164 F. Supp. 2d 892
(W.D. Tex. 2001) ...............................................................................................10

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) ....................................................................5, 7, 15

*Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065
(C.D.Cal. 2004) ..................................................................................................11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ....................................................................6, 8, 16

## **STATUTES**

Telephone Consumer Protection Act (47 U.S.C. § 227)..........................................2

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT
TO FRCP 12(b)(2)

## I.   INTRODUCTION

The First Amended Complaint ("FAC") adequately pleads a prima facie case for specific jurisdiction over Defendant Craig Harmon ("Harmon"). Harmon's management and General Counsel positions place him at the center of Rightscorp's decision-making team that devised an unlawful scheme to threaten people into making quick cash settlement of copyright infringement claims utilizing automated "robo-calls" in violation of the Telephone Consumer Protection Act ("TCPA") and abusing process by serving invalid subpoenas on internet service providers ("ISPs") to trick them into revealing the identities and contact information for millions of people in violation of the Digital Millennium Copyright Act ("DMCA").

Harmon's General Counsel and management advice to Rightscorp, whose principal place of business is in California, is integral to the unlawful acts alleged in this lawsuit. Harmon thus purposefully directed intentional acts <u>into</u> California knowing that Rightscorp would commit unlawful acts <u>from</u> California, the effects of which would be felt <u>in</u> California. In addition, Harmon earns income in California from the efforts of his employees and partners who work at one of his partnership offices in California, resulting in Harmon filing individual California income tax returns. Harmon's partnership also contracted with Rightscorp. Thus, Harmon, as Rightscorp's General Counsel and management team member, purposefully availed himself of the privilege of conducting business in California. The claims alleged in Plaintiff's First Amended Complaint ("FAC") clearly arise from Harmon's direct impact on Rightscorp's unlawful actions, and specific jurisdiction applies to Harmon's actions.

Harmon's Motion To Dismiss and Declaration do not refute the FAC's allegations or the evidence supporting it. Harmon <u>completely ignores</u> the abuse of process allegations that he knew before Rightscorp began issuing them that the subpoenas were legally invalid under the DMCA. (FAC, ¶¶ 94, 100.) Harmon also <u>completely ignores</u> Rightscorp's S.E.C. Form 8-K and Rightscorp's website, which

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

identify him as Rightscorp's General Counsel and management member. Harmon's admissions by silence are thus fatal to the Motion To Dismiss.  Further, Harmon evasively skirts the allegations that he had direct personal participation in or personally authorized Rightscorp's actions that violated the TCPA. (FAC, ¶ 87.) Harmon couches his argument in terms of what he "heard," but makes no mention of what he "did" or "said" regarding the use of telephones to contact putative class members in California.

Finally, Rightscorp and Harmon are now engaged in a cover-up of their admissions that Harmon is, or at relevant times was, Rightscorp's General Counsel and management team member, because they have recently deleted Harmon's name from Rightscorp's website. This cover-up highlights the importance of Harmon's roles in directing and authorizing Rightscorp's unlawful actions, and supports specific jurisdiction.

## II.  FACTUAL BACKGROUND

Rightscorp's business model involves using federal legal process and the threat of statutory damages for copyright infringement to engage in "speculative invoicing" of consumers who it accuses of having engaged in file sharing of copyrighted materials. (FAC, ¶ 1.)  In other words, Rightscorp acts as the agent of certain copyright holders and threatens numerous individuals with copyright infringement damages of $150,000 in order to exact a quick settlement of $20, which Rightscorp allegedly splits with its principals.

Plaintiff alleges that Defendants Rightscorp, Harmon, Christopher Sabec ("Sabec"), Robert Steele ("Steele"), Dennis J. Hawk ("Hawk"), BMG Rights Management (US) LLC ("BMG") and Warner Bros. Entertainment, Inc. ("Warner Bros.") (collectively "Defendants") have "unlawfully made extensive and repeated use of an automatic telephone dialing system and/or a prerecorded or artificial voice (a 'Robo-Caller'), to call Plaintiff on his cell phone, in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227) ('TCPA')." (FAC, ¶ 2.)  Plaintiff further

-2-

alleges that Defendants committed abuse of process at least 142 times under California law by unlawfully issuing subpoenas to Internet Service Providers ("ISPs") to gain the identities, addresses and phone numbers of individuals, contrary to the DMCA, which does not permit such subpoenas to be used to compel ISPs to identify its customers when the ISPs merely act as conduits for electronic communications.  (FAC, ¶¶ 3, 47.)  These unlawful acts are also alleged with regard to the nationwide TCPA Class (FAC, ¶ 65) and the nationwide Abuse of Process Class (FAC, ¶ 66).

        Rightscorp's scheme to "monetize copyrights" through unlawful subpoenas and unlawful automated calls is the brainchild of Rightscorp's <u>management triumvirate</u> consisting of its CEO (Sabec), CTO/COO (Steele) and General Counsel (Harmon). (FAC, ¶¶ 9-12.)  Between the filing of the Complaint and the FAC, it has been confirmed that Rightscorp's management has been identified to the world in a Form 8-K current report that Rightscorp, a publicly traded company, filed with the S.E.C. on April 28, 2014.  In that Form 8-K, Harmon is listed as the "General Counsel" for "The Team" of executives controlling and managing Rightscorp's day-to-day activities along with Rightscorp's CEO and its CTO/COO.  Harmon, as "General Counsel," is also identified in the Form 8-K as a member of the "Management" with the CEO and CTO/COO.  Mr. Harmon's credentials are touted in both instances as "25 years at McGuire Woods (full partner)."  (Request For Judicial Notice ("RJN"), Ex "L," pages 18 and 30; *see also* Pietz Decl., ¶ 2.)

        On February 25, 2015, as part of a meet and confer regarding this Motion To Dismiss, Plaintiff's counsel provided to Defendants' counsel a copy of the Form 8-K as substantiation for its allegations that Harmon is the General Counsel of Rightscorp and a member of its management team. (Pietz Decl., Ex. "1".)  Harmon's Motion To Dismiss and his Declaration in support thereof do not address Rightscorp's Form 8-K.

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

On April 2, 2015 (<u>subsequent</u> to the filing of Plaintiff's Complaint), Rightscorp's website disclosed that its "Leadership" consisted of its CEO (Sabec), its CTO/COO (Steele), and its four "Outside Counsel" law firms, including McGuire Woods.  <u>However, in 2013 and 2014</u> (and likely for years prior), Rightscorp's website prominently displayed its "Leadership" as consisting of the triumvirate of "Craig Harmon, General Counsel" along with its CEO and CTO/COO. (Levin Decl., Exs. "A," "B," and "C.")  Rightscorp has therefore recently deleted "Craig Harmon, General Counsel" from its website in an apparent effort to cover-up Harmon's role as Rightscorp's General Counsel and the third member of its management team.

## III.  ARGUMENT

### A.    The Court Has Specific Jurisdiction Over Harmon

The party seeking to invoke jurisdiction of the federal court has the burden of establishing that such jurisdiction exists. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (specific jurisdiction found).  However, at this stage of the litigation, the plaintiff need only "make, through [his] pleadings and affidavits, a prima facie showing of the jurisdictional facts." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001) (specific jurisdiction found).  In ruling on a Rule 12(b)(2) motion, the court should view the pleadings in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir. 1995) (specific jurisdiction found). To determine if Plaintiff has shown a prima facie case, "All factual disputes are resolved in the plaintiffs' favor." *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (specific jurisdiction found).

The Ninth Circuit uses a "tripartite analysis in determining specific jurisdiction: (1) the nonresident defendant must purposefully direct his activities <u>or</u> consummate some transaction with the forum or residents thereof; <u>or</u> perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Lake, supra* at 1421 (emphasis added). The plaintiff bears the burden on the first two prongs. If the plaintiff establishes both prongs one and two, the defendant must come forward with a <u>compelling case</u> that the exercise of jurisdiction would not be reasonable. *Washington Shoe Co. v. A-Z Sporting Goods Inc*., 704 F.3d 668, 672 (9th Cir. 2012) (specific jurisdiction found).

### 1. Harmon Purposefully Directed His Activities Into California As General Counsel And A Member of Rightscorp's Executive Management Team

"The purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783 … (1984)." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (specific jurisdiction found against out-of-state defendants due to their communications into California). The "effects" test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id. See also Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (specific jurisdiction based on purposeful direction).

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that it was proper for a California state court to exercise jurisdiction over two Florida newspapermen in a libel action arising out of their conduct in Florida, which caused injuries to a plaintiff in California. The first reporter resided in Florida, and did most of his research in Florida by merely calling sources in California.  The second reporter was an executive at the Enquirer who had only been to California twice, neither time involving the published article. The case found its way to the Supreme Court, which noted that California's "long-arm" statute permits an assertion of jurisdiction over a nonresident defendant to the extent permitted by the state and

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

federal Constitutions.  *Id*. at fn. 5. The Supreme Court stated:  "In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects" of their Florida conduct in California."  *Id*. at 789.  "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  *Dole Food Co.*, *supra* at 1111.

In *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006), the Court said:  "<u>But we do not read *Calder* necessarily to require in purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts</u>."  *Id*. at 1208 (emphasis added) (specific jurisdiction over French entities found).  "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  *Id*. at 1207.  "A single forum state contact can support jurisdiction if 'the cause of action ... arise[s] out of that particular purposeful contact of the defendant with the forum state.'"  *Id*. at 1210.  Further, "activity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test."  *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986) (specific jurisdiction found).  "[T]he Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, '[s]o long as a commercial actor's efforts are "purposefully directed" toward residents of another State.'"  *Id*.

In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Supreme Court upheld personal jurisdiction in New Hampshire based on a libel clam brought by a New York resident against a publisher that was an Ohio corporation.  Hustler's only contact with New Hampshire was that its magazine was sold there.  The Supreme Court found that Hustler's contacts supported specific jurisdiction:  "[R]espondent is

carrying on a 'part of its general business' in New Hampshire, and that is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire." *Id*. at 779-780.   In *Washington Shoe Co. v. A-Z Sporting Goods Inc*., 704 F.3d 668 (9th Cir. 2012), a Washington shoe manufacturer brought a copyright infringement action against an Arkansas retailer that allegedly sold knock-off copies of its boots.  The Ninth Circuit held that specific jurisdiction existed because the retailer should have known the impact of its intentional acts would likely be suffered in California. "[W]here a defendant knows—as opposed to being able to foresee—that an intentional act will impact another state, the 'expressly aimed' requirement is satisfied."  *Id*. at 677.

There is no better evidence of expressly directing or aiming conduct toward California residents than here.  Harmon managed Rightscorp at an executive level and was its General Counsel, according to Rightscorp's 8-K filing and its website. Harmon clearly helped manage and provide advice about Rightscorp's very business model. (FAC, ¶¶ 23-24.)   Rightscorp's business model depends on two essential features. First, Rightscorp must be able to coerce or trick ISPs into revealing the identities and contact information of alleged copyright infringers.  This cannot be lawfully accomplished through DMCA subpoenas because the DMCA does not require ISPs to comply with or respond to DMCA subpoenas seeking to reveal the identities of its internet users when the ISPs merely act as conduits for electronic communications for its users.  (FAC, ¶ 47 and law cited therein.)  Critically, Harmon does not deny that he advised, managed and/or directed Rightscorp about its unlawful use of the DMCA subpoenas to try to compel ISPs into revealing the contact information of internet users. Harmon's Declaration and the Motion To Dismiss are completely silent on Harmon's involvement in the abuse of process through the unlawful use of the DMCA subpoenas (FAC, ¶¶ 38-56, 92-102). Harmon admits that he "generally counsel[s] Rightscorp with respect to its intellectual property rights."  (Harmon Decl., ¶ 12.)  Even assuming *arguendo* that

-7-

Harmon did not specifically advise Rightscorp to violate any laws, *Calder* does not require in purposeful direction cases that all or even any jurisdictionally relevant effects have been caused by wrongful acts. *Yahoo, supra* at 1208. Thus, it is sufficient that Harmon directed, authorized or instructed Rightscorp's as to its business activities in California, which affected California residents.

Therefore, Plaintiff has established a prima facie case that Harmon, as one of Rightscorp's management team leaders and its General Counsel, intentionally directed Rightscorp, with its principal place of business in California (FAC, ¶¶ 6-7) about the use of the subpoenas, that Rightscorp's unlawful acts were committed from California, and that Harmon knew the impact of his intentional acts would likely be suffered in California. See *Dole Food Co., supra* at 1111 (specific jurisdiction based on "expressly aiming" tortious communications into California).

The second essential feature of Rightscorp's business model is that after millions of internet users are identified, they must each be contacted and repeatedly threatened with a lawsuit and a $150,000 copyright fine in order for Rightscorp to exact a quick $20 settlement from them. (FAC, ¶¶ 28- 37.) Harmon "generally counsel[s] Rightscorp with respect to its intellectual property rights." (Harmon Decl., ¶ 12.) It was clearly obvious to Harmon that exacting small settlements from millions of internet users would require hundreds of threatening phone calls to each of those millions of internet users over many weeks and months. It was economically unfeasible for Rightscorp to pay workers to call millions of internet users hundreds of times each for a mere $20 settlement. It was therefore inevitable that such a settlement mill could not be sustained financially without the use of pre-corded, automated or "robo-calls." Therefore, Plaintiff has also established a prima facie case that Harmon, through his role as a one of Rightscorp's executive management team leaders and as its General Counsel, intentionally directed Rightscorp in California about the use of the computerized or mechanized calling, that Rightscorp's unlawful acts were committed from California, and that Harmon

-8-

knew the impact of his intentional acts would likely be suffered <u>in</u> California. (FAC, ¶¶ 23-24.)

<u>Harmon's protestations that he was never been an officer or employee of Rightscorp are contradicted by Rightscorp's Form 8-K and website.</u>  While Rightscorp cannot magically withdraw its Form 8-K from the S.E.C., it has recently deleted years' worth of admissions to the world on its website that Harmon was its General Counsel and a member of its leadership team.  Harmon obviously knew his General Counsel and management roles in Rightscorp were prominently displayed on Rightscorp's website.  The recent disappearance of his name from the website clearly smacks of a cover-up of Harmon's integral role in guiding Rightscorp's actions in California.  In *Lake, supra*, the out-of-state attorney argued that his rendition of legal services in California, which resulted in an order depriving plaintiff of custody over his son in Idaho, did not constitute purposeful availment of Idaho laws because to "so characterize his conduct would subject any attorney to jurisdiction in any state in which a court order might foreseeably be granted full faith and credit."  The Ninth Circuit responded:  "Taylor misconceives the significance of his actions." Under the intentional direction analysis, the Ninth Circuit found that Taylor intended a foreign act, obtaining the California ex parte order, to have an effect in the forum state of Idaho.  *Lake, supra* at 1422-23.

Harmon admits that he "generally counsel[s]" Rightscorp. (Harmon Decl., ¶ 12.  "Generally counsels" and "General Counsel" is evasive wordplay.  In ruling on a Rule 12(b)(2) motion, the court should view the pleadings in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *Caruth*, *supra* at 128 (9th Cir. 1995).  "All factual disputes are resolved in the plaintiffs' favor." *Lake, supra* at 1420. [1]  For purposes of this Motion To Dismiss, Harmon must

---

[1] Harmon's Declaration is evasive about the advice and direction he <u>gave</u> to Rightscorp because he comments  only about terminology he "heard" at Rightscorp.  (See Harmon Decl. at ¶ 22.) Perhaps Harmon himself used different terms for Rightscorp's computerized calls other than "robo-calls.

therefore be treated as Rightscorp's General Counsel and management team member.

### a. The Purposefully Directing or "Effects" Test Applies to TCPA Cases

Several district courts have found the exercise of specific personal jurisdiction based on the *Calder* "effects" test for purposeful direction, to be proper in cases involving alleged TCPA violations based on calls made to a plaintiff's cell phone. *See Heidorn v. BDD Marketing & Mgmt. Co.*, 2013 WL 6571629 (N.D.Cal. Aug. 19, 2013) (exercising personal jurisdiction over out-of-state defendant who contacted plaintiff's California cell phone in violation of the TCPA); *Baker v. Carribean Cruise Line, Inc.*, 2014 WL 880634 (D.Ariz. Mar. 6, 2014) ("[The] complaint in this case is sufficient to establish specific jurisdiction, based on the allegation that Defendant made calls to Plaintiff's Arizona [cell phone] number and the fact that those calls are the basis for Plaintiff's claims."); *Hudak v. Berkeley Group, Inc.*, 2014 WL 354676 (D.Conn. Jan. 23, 2014) (finding "purposeful availment" prong satisfied where defendants allegedly caused calls to be made to plaintiff's cell phone in violation of the TCPA); *Jackson's Five Star Catering, Inc. v. Beason*, 2012 WL 3205526 at *6 (E.D. Mich. July 26, 2012) ("many courts have held that corporate actors can be individually liable for violating the TCPA 'where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute."'"; quoting, *inter alia*, *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)).  Obviously, Harmon did not have to personally make the calls if he advised that such calls were proper as Rightscorp's General Counsel or approved of them in any way as a member of Rightscorp's management team, or conspired in any way with the other defendants regarding the making of such calls to California recipients.  (See FAC, ¶¶ 87, 100.)

---

Harmon couches his argument in terms of what he "heard," but makes no mention of what he "did" or "said" regarding the use of telephones to contact putative class members in California.

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

### b. Specific Jurisdiction Exists Over Officers of Corporations Who Purposefully Direct Activities To The Forum State

In *Keeton v. Hustler Magazine, Inc.*, *supra*, the Supreme Court found specific jurisdiction and stated: "[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Id.*, 465 U.S. 770 at 781 n. 13.  Cases where specific personal jurisdiction was found to exist over individual corporate officer defendants typically have involved situations where the individual defendant had control of, and direct participation in the alleged activities.  *Id.*  In *Openwave Systems Inc. v. Fuld*, 2009 WL 1622164 (N.D.Cal. 2009), the court found that plaintiff made a prima facie showing of specific jurisdiction over the non-resident officer defendants based on allegations that each of the defendants conceived of, chose to participate in and implement the plan that caused the specified misrepresentations).  *See also j2 Global Communications, Inc. v. Blue Jay, Inc.*, 2009 WL 29905 at *9 (N.D.Cal. 2009) (exercising specific jurisdiction over nonresident former corporate president defendant whose only contact with California was through directing agents to send fax advertisements to nationwide network of servers, including in California); *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065, 1072 (C.D.Cal. 2004) (specific jurisdiction found against corporate officer with no physical contacts with California in six years except airport layovers).  In *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir 1989), the Court construed Arizona's long-arm statute, which is identical to California's long-arm statute in extending to the limit of Constitutional due process.  The Ninth Circuit then held that two officers of a California corporation (Metro) "purposefully directed their activities" toward Arizona when the corporation solicited business from Arizona residents. The Court stated:  "Miller and Smith should reasonably have known that their actions 'could have [an] effect on the plaintiff, ... and that the brunt of the injury caused by their actions would be felt in [Arizona].'"  *Id.* at 522-523.  The first prong of the tripartite test for specific

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT
TO FRCP 12(b)(2)

jurisdiction in California is satisfied because Harmon, as an officer of Rightscorp (according to Rightscorp itself) made decisions and gave advice to Rightscorp about its business model, which affected California residents.

### 2. Harmon Purposefully Availed Himself of the Privilege of Managing and Counseling Rightscorp's California Business

"A nonresident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." *Smith Noble L.L.C. v. South Jersey Vinyl Inc.*, 47 U.S.P.Q.2d 1944, 1946 (C.D.Cal. 1998) (*citing Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). The first prong of the tripartite test is also satisfied through Harmon's purposeful availment of the privilege of conducting activities in California. Harmon is General Counsel according to Rightscorp Form 8-K and its website for 2013-2014. (RJN, Ex "L," pages 18 and 30, *see also* Pietz Decl., ¶ 2; Levin Decl., Exs. "A"–"C".) Harmon admits that he derives income from McGuire Woods' California office and has filed California tax returns. (Harmon Decl., ¶ 20.) It does not matter than in some years, Harmon reports his California income in a "composite" partnership return or that the income may not be derived from his own efforts. All that matters is that Harmon is a partner in a partnership that owns and runs a California business from which he derives yearly income that is reportable in California. It also does not matter whether Harmon or his partnership has the contract with Rightscorp because the result is the same – as a partner in McGuire Woods, Harmon is legally obligated on that California contract[2], which is performed in California. (FAC, ¶ 20.) Finally, Harmon admits that he has visited Rightscorp's offices in California. (Harmon Decl., ¶ 21.) All these factors make it foreseeable that Harmon would be haled into a California court.

---

[2] Harmon admits he personally signed the contract with Rightscorp. (Harmon Decl., ¶ 19.)

Managing, directing and/or advising a California business can be accomplished from afar in today's internet, digital world, and out-of-state officers of corporations are deemed to have purposefully availed themselves of the privilege of doing business even though they are not physical present in the forum state. *See Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22-23 (2nd Cir. 1988), where the court upheld jurisdiction in New York over California defendants who were officers of the corporate defendant. The court found the corporation to have "engaged in purposeful activities in New York", and that the officers "both benefitted from those activities and exercised extensive control over [the corporation.]").  Harmon has thus purposefully availed himself of the privilege of doing business in California through his management and General Counsel duties for Rightscorp in California, his income derived from California, his tax returns filed in California, and his signing a contract with a California corporation.  In ruling on a Rule 12(b)(2) motion, the court should view the pleadings in a light most favorable to plaintiff and all doubts are to be resolved in his favor.  *Caruth*, *supra* at 128 n.1.  "All factual disputes are resolved in the plaintiffs' favor."  *Lake, supra* at 1420.

**B.    The TCPA and Abuse of Process Claims Arise Out of Harmon's Activities in Managing and Advising Rightscorp In California**

The second prong of the specific jurisdiction analysis requires that the claim must be one which arises out of or relates to the defendant's forum-related activities. *Lake*, *supra* at 1421 (specific jurisdiction found against out-of-state attorney whose conduct resulted in husband losing custody of child in forum state).

Harmon's Declaration and Motion To Dismiss nowhere deny that Harmon gave business and/or legal advice to Rightscorp about the use of the DMCA subpoenas to try to compel ISPs to reveal the identities of their internet users.  The litany of Harmon's denials of other California contacts omits any response to the allegations of the FAC that Harmon, along with other Individual Defendants, made unlawful use of the DMCA subpoenas. (FAC, ¶¶ 38-56, 92-102.)  Harmon's

-13-

admission through silence speaks loudly and is sufficient on its own to allege a prima facie case that the claim for abuse of process arises out of and relates to Harmon's California-related activities serving as Rightscorp's General Counsel and member of its management team.

Further, Harmon's Declaration rings falsely regarding his attempted denial of the allegations of violation of the TCPA. (FAC, ¶¶ 38-64, 74-91.) Harmon was Rightscorp's General Counsel and a management team member, so the FAC focuses on what he "said" and "did" regarding his "personal participation in or personally authorized the actions by Rightscorp that violate the TCPA." (FAC, ¶ 87.) However, Harmon cleverly frames his purported denial of the TCPA violations in terms of what words he allegedly "heard" used in connection with Rightscorp. (Harmon Decl., ¶ 22.) Harmon makes no mention of what he "did" or "said" regarding the use of telephones to contact putative class members in California. This is not a true denial of the sum or substance of the FAC allegations. The bottom line is that Harmon is and/or was Rightscorp's General Counsel. Whatever form Harmon's intellectual property, business and legal advice took, and however it was communicated (verbally and/or in writing), Rightscorp's business model could not exist without Harmon's contributions. The claim for violation of the TCPA arises out of and relates to Harmon's California-related activities serving as Rightscorp's General Counsel and as a member of its management team. Again, the court should view the pleadings in a light most favorable to plaintiff and all doubts are to be resolved in his favor. *Caruth*, supra at 128 n.1. "All factual disputes are resolved in the plaintiffs' favor." *Lake, supra* at 1420.

C.     **The Exercise of Jurisdiction Is Reasonable**

Defendants admittedly bear the burden of proof regarding the third prong of the specific jurisdiction analysis regarding the reasonableness of a forum's exercise of jurisdiction. If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would

-14-

not be reasonable. *Washington Shoe Co., supra* at 672.  Indeed, "there is a *presumption of reasonableness* upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable."  *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd*., 784 F.2d 1392, 1397 (9th Cir. 1986) (emphasis in original). Harmon cannot overcome this presumption of reasonableness nor present a compelling case that the exercise of jurisdiction would not be reasonable.

The seven factors used to determine the reasonableness of a forum's exercise of jurisdiction are: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  The first factor, discussed in detail above, strongly favors Plaintiff.  Harmon is in denial on this factor, and he is being aided and abetted by Rightscorp's apparent cover-up of Harmon's General Counsel role by its <u>recent</u> deletion of his name and "General Counsel" title under "Leadership" on Rightscorp's website.  Rightscorp's cover-up smacks of a conspiracy similar to the one alleged in Plaintiff's allegations. (FAC, ¶ 10.)  Rightscorp's Form 8-K and its website as it existed until 2014, all demonstrate that Harmon, as General Counsel and part of Rightscorp's management team, purposefully interjected himself into California's affairs by managing and directing Rightscorp's actions in California, toward California residents, and impacting residents of California.

The second factor, the alleged burden on Harmon defending in California, does not weigh much in Harmon's favor because he is a partner of a national law

-15-

firm with an office in California. "A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-129 (9th Cir. 1995) (specific jurisdiction exercised in California over company based in Buenos Aires). The mere fact local litigation is inconvenient (or some other forum more convenient) is not enough. Harmon must show a due process violation such that jurisdiction in California would make the litigation "'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (specific jurisdiction found).  Requiring the nonresident to defend locally is not constitutionally unreasonable "in this era of fax machines and discount air travel." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 145 F.Supp.2d 1168, 1178 (N.D.Cal. 2001) (specific jurisdiction found). The second factor clearly meant more years ago before teleconferencing and other communication technologies (email, texting, FaceTime, instantaneous email exchange of documents, etc.) were invented.  Realistically, Harmon will be as ably defended in California as he would be in Virginia, and he need not even travel to California except for the trial.

The third factor is neutral, as Harmon concedes.  (Motion To Dismiss, at 10:7-8.)  Harmon also concedes that the fourth, fifth and sixth factors "arguably favor Plaintiff" (Motion To Dismiss, at 10:8-9), which is an understatement because all three factors tip decidedly in favor of California given that almost all defendants, especially Rightscorp, are located here, and California has a substantial interest in adjudicating the dispute affecting its citizens. This leaves only the seventh factor, the unavailability of an alternative forum.  On serious examination, this factor turns out to be deceptive.  Harmon argues that he could be prosecuted in Virginia.  But with Harmon's co-defendants Sabec, Steele, Rightscorp and Warner Bros. all domiciled

-16-

in California, Virginia does not appear to be a viable or practicable alternative forum.  In any event, the slight weight carried by the seventh factor does not overcome the greater weight of factors one, four, five and six clearly weighing in Plaintiff's favor, with the third factor being neutral.  On balance, it would be more than reasonable for this Court to exercise specific jurisdiction over Harmon in California.

## IV.  CONCLUSION

For all the foregoing reasons, Harmon's Motion To Dismiss for lack of personal jurisdiction should be denied.  Alternatively, the Motion To Dismiss should not be granted before Plaintiff takes discovery on jurisdiction, or it should be granted <u>without</u> prejudice to Plaintiff amending its FAC to re-name Harmon as a defendant after discovery is taken.

DATED:  April        , 2015

| THE PIETZ LAW FIRM | ROXBOROUGH, POMERANCE, NYE & ADREANI |
|---|---|
| */s/ Morgan E. Pietz* | */s/ Drew E. Pomerance* |
| Morgan E. Pietz (SBN 260629) | Drew E. Pomerance (SBN 101239) |
| THE PIETZ LAW FIRM | Anne S. Kelson (SBN 257851) |
| 3770 Highland Avenue, Suite 206 | Jesse B. Levin (SBN 268047) |
| Manhattan Beach, CA 90266 | ROXBOROUGH, POMERANCE, NYE & ADREANI |
| mpietz@pietzlawfirm.com | 5820 Canoga Avenue, Suite 250 |
| Telephone: (310) 424-5557 | Woodland Hills, CA 91367 |
| Facsimile:  (310) 546-5301 | dep@rpnalaw.com |
|  | ask@rpnalaw.com |
|  | jbl@rpnalaw.com |
|  | Telephone: (818) 992-9999 |
|  | Facsimile:  (818) 992-9991 |

*Attorneys for Plaintiff John Blaha,*
*individually and on behalf of others similarly situated*

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)

## DECLARATION OF MORGAN E. PIETZ

I, MORGAN E. PIETZ, declare as follows:

1.       I am an attorney duly licensed to practice before all of the Courts of the State of California. I am an attorney with The Pietz Law Firm, attorneys of record in this case for Plaintiff John Blaha, individually and on behalf of others similarly situated.  I have personal knowledge of the facts set forth herein and if called upon as a witness, I could and would testify competently thereto under oath.

2.       On February 24, 2015, I conducted an internet search of www.edgar.com, the official website for the U. S. Securities and Exchange Commission. Through my search efforts, I was able to locate and download an April 28, 2014 "Form 8-K (Current report filing)," filed by Defendant Rightscorp, Inc. ("Rightscorp") for the period ending April 25, 2014.  The Form 8-K includes several blank pages, which are part of the original documents that I downloaded.  I have had the Form 8-K pages manually numbered in ink in the lower right corners to facilitate my reference to specific pages for the Court's convenience.  A true and correct copy of the 31-page Form 8-K I downloaded properly from www.edgar.com is attached hereto as Exhibit "L" and further referenced in the Request For Judicial Notice filed concurrently with this Opposition to Harmon's Motion To Dismiss For Lack of Personal Jurisdiction Pursuant To FRCP 12(b)(2) and "Exhibit L" in my declaration authenticating documents subject to judicial notice filed concurrently herewith.

///

///

///

///

///

///

-18-

3.      Attached hereto as Exhibit "1" is a true and correct copy of my February 25, 2015 meet and confer letter to Defense Counsel Jesse Contreras, et al. regarding defendant Harmon's objections to personal jurisdiction.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of April, 2015 at Manhattan Beach, California.

*/s/ Morgan E. Pietz*_____

MORGAN E. PIETZ

## DECLARATION OF JESSE B. LEVIN

I, JESSE B. LEVIN, declare as follows:

1.      I am an attorney duly licensed to practice before all of the Courts of the State of California. I am an attorney with the law firm of Roxborough, Pomerance, Nye & Adreani, attorneys of record in this case for Plaintiff John Blaha, individually and on behalf of others similarly situated.  I have personal knowledge of the facts set forth herein and if called upon as a witness, I could and would testify competently thereto under oath.

2.      On April 2, 2015, I searched www.rightscorp.com, the official website for defendant Rightscorp, Inc. ("Rightscorp").  Attached hereto as Exhibit "A" is a true and correct copy of a webpage I properly downloaded on April 2, 2015 from Rightscorp's website, which lists its "Leadership" as comprised of "Christopher Sabec, CEO," "Robert Steele, CTO, COO," and "Outside Counsel" consisting of four law firms, including McGuire Woods in Richmond, VA.

3.      I am familiar with a website called www.archive.org, also known as the "WaybackMachine."  This website stores snapshots of webpages from billions of websites taken at intervals of many months.

4.      Attached hereto as Exhibit "B" is a true and correct copy of a Rightscorp webpage I properly downloaded from the WaybackMachine, which was captured and stored as it appeared on November 8, 2013.  This older webpage lists Rightscorp's "Leadership" as comprised of "Christopher Sabec, CEO," "Robert Steele, CTO, COO," and "Craig Harmon, General Counsel."   I highlighted the date "20131108" at the bottom of the webpage for the Court's convenience to help identify how the date of Rightscorp's webpage is captured by the WaybackMachine.

5.      Attached hereto as Exhibit "C" is a true and correct copy of a Rightscorp webpage I properly downloaded from the WaybackMachine, which was

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT
TO FRCP 12(b)(2)

captured and stored as it appeared on August 10, 2014.  This older webpage lists Rightscorp's "Leadership" as comprised of "Christopher Sabec, CEO," "Robert Steele, CTO, COO," and "Craig Harmon, General Counsel."  I highlighted the date "20140810" at the bottom of the webpage for the Court's convenience to help identify how the date of Rightscorp's webpage is captured by the WaybackMachine.

6.     These are the only webpages hosted by the Rightscorp official website that I was able to locate.  Exhibits "A" and "C" indicate that sometime between August 10, 2014 and April 2, 2015, Rightscorp changed its website to delete Craig Harmon's name as its General Counsel and as a member of its Leadership team. The Complaint in this lawsuit was filed on November 21, 2014.  The First Amended Complaint in this lawsuit was filed on March 9, 2015.


I declare under penalty of perjury that the foregoing is true and correct. Executed this _____ day of April, 2015 at Woodland Hills, California.


/s/ Jesse B. Levin_____
JESSE B. LEVIN

OPPOSITION TO DEFENDANT CRAIG HARMON'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FRCP 12(b)(2)