Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile:  (310) 546-5301

Drew E. Pomerance (SBN 101239)
Anne S. Kelson (SBN 257851)
Jesse B. Levin (SBN 268047)
ROXBOROUGH, POMERANCE, NYE & ADREANI
5820 Canoga Avenue, Suite 250
Woodland Hills, CA 91367
dep@rpnalaw.com
ask@rpnalaw.com
jbl@rpnalaw.com
Telephone: (818) 992-9999
Facsimile:  (818) 992-9991

*Attorneys for Plaintiff John Blaha,*
*Individually and on Behalf of Others Similarly Situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Blaha, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>Rightscorp, Inc., a Nevada corporation, f/k/a Stevia Agritech Corp.; Rightscorp, Inc., a Delaware corporation; Christopher Sabec; Robert Steele; Craig Harmon; Dennis J. Hawk; BMG Rights Management (US) LLC; Warner Bros. Entertainment Inc.; and John Does 1 to 10,<br><br>        Defendants. | Case No.: 2:14-cv-9032-DSF-(JCGx)<br><br>Assigned to: Hon. Dale S. Fischer<br>United States District Judge<br><br>Referred to: Hon. Jay C. Gandhi<br>United States Magistrate Judge<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**<br><br>Hearing:<br>Date:  May 11, 2015<br>Time: 8:30 a.m.<br>Place: Courtroom 840<br>      Before Judge Fischer |

-1-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY ........................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .............................. 4

III.  ARGUMENT.......................................................................................... 7

    (a) Elements of the Tort of Abuse of Process ........................................ 7

    (b) Per "Uniformly Adopted" Federal Precedent, Rightscorp Used the DMCA Section 512(h) Subpoena Procedure For a Purpose It Was Not Designed to Achieve ............................................................................................ 12

    (c) Rightscorp *Knew* it was Systematically Violating Section 512(h) and Abusing this Court's Subpoena Power, as Evidenced by the Way it Beat a Hasty Retreat in the Face of the ISPs' Motions to Quash ..................................... 16

    (d) Since a Determination as to the Purpose of DMCA Section 512(h) is an Essential Element of the Abuse of Process Claim Alleged Here, this Claim "Arises Under" Federal Law.............................................................. 20

    (e) Since Diversity Jurisdiction Has Not been Invoked, and the Abuse of Process Claim Arises Under Federal Law, California's State Anti-SLAPP Law and Litigation Privilege Do Not Apply ............................................... 22

    (f) Even if the Anti-SLAPP Law Did Apply, Defendants Have Failed to Meet Their Burden of Showing that Speculative Invoicing Arises from Protected First Amendment Activity "in Connection With a Public Issue" ............................. 23

    (g) Even if the Anti-SLAPP Law Did Apply, And Speculative Invoicing Was a "Public Issue," The Motion Should Still be Denied Because Plaintiff Has a Reasonable Probability of Success on the Merits................................ 23

    (h) The First Amended Complaint States a Plausible Claim for Abuse of Process as to All Defendants, so Dismissal Per Fed. R. Civ. P. 12(b)(6) Would Also Be Erroneous ................................................................................ 25

IV. CONCLUSION ................................................................................... 25

-i-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

<u>*Bautista v. Hunt & Henriques*</u>, 2012 WL 160252,
2012 U.S. Dist. LEXIS 5009 (N.D. Cal. Jan. 17, 2012)............................................24

<u>*Berisic v. Winckelman*</u>, 2003 WL 21714930 (S.D.N.Y. July 23, 2003)............21, 22

<u>*Bidna v. Rosen*</u>, 19 Cal. App. 4th 27 (1993) .............................................................11

<u>*Board of Education of Farmingdale Union Free Sch. Dist. v. Farmingdale*</u>
<u>*Classroom Teachers Ass'n*</u>, 38 N.Y.2d 397 (1975)................................................9, 10

<u>*Brydges v. Lewis*</u>, 18 F.3d 651  (9th Cir. 1993) ........................................................4

<u>*Edwards v. Centex Real Estate Corp.*</u>, 53 Cal. App. 4th 15 (1997) .......................24

<u>*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*</u>,
515 F.3d 1019 (9th Cir. 2008) ................................................................................7, 8

<u>*Flores v. Emerich & Fike*</u>, 416 F. Supp. 2d 885 (E.D. Cal. 2006) ...................11, 12

<u>*Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*</u>,
1993 WL 410024, 1993 U.S. Dist. LEXIS 14669
(D. S.C. July 21, 1993) ..................................................................... 1-2, 20, 21, 22

<u>*Gallimore v. State Farm Fire & Cas. Ins. Co.*</u>,
102 Cal. App. 4th 1388 (2002) ...............................................................................23

<u>*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*</u>,
337 F.3d 297 (3d Cir. 2003)....................................................................................11

<u>*Ghazali v. Moran*</u>, 46 F.3d 52 (9th Cir. 1995) .........................................................4

<u>*Gonzalez-Rucci v. United States INS*</u>, 539 F.3d 66 (1st Cir. 2008) .......................11

<u>*Hilton v. Hallmark Cards*</u>, 599 F.3d 894 (9th Cir. 2010) ..................................1, 22

-ii-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO
STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

*In re Charter Commc'ns, Inc.*, 393 F.3d 771 (8th Cir. 2005) .........................passim

*In re Subpoena to Univ. of N.C. at Chapel Hill*,
367 F. Supp. 2d 945 (M.D. N.C. 2005) ...................................................13

*Interscope Records v. Does 1-7*, 494 F. Supp. 2d 388 (E.D. Va. 2007).................13

*Ion Equipment Corp. v. Nelson*,110 Cal. App. 3d 868 (1980) ..................................8

*K-Beech, Inc. v. Does 1-85*, 2011 WL 10646535 at *2-3,
2011 U.S. Dist. LEXIS 124581 (E.D. Va., as amended Oct. 13, 2011).................19

*Maximized Living, Inc. v. Google, Inc.*, 3:11-mc-80061, 2011 WL...............passim

*Oei v. N Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089
(C.D. Cal. 2006) (Morrow, J.) ......................................................1, 22

*Recording Indus. Assoc. of Am. v. Verizon Internet Svcs., Inc.*,
351 F.3d 1229 (D.C. Cir. 2003)......................... 2, 4, 6, 12, 13, 15, 16

*Restaino v. Bah (In re Bah)*, 321 B.R. 41 (B.A.P. 9th Cir. 2005) ...........................1

*Richmond v. American Systems Corp.*, 792 F. Supp. 449
(E.D. Va. 1992) ...............................................................................21

*Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006) .........................................7, 8

*Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145
(N.D. Cal. 2013)..............................................................14, 16

*Simon v. Navon*, 71 F.3d 9 (1st Cir. 1995)..............................................10

*Spellens v. Spellens*, 49 Cal. 2d 210 (1957);.........................................8, 9

*Summit Media LLC v. City of L.A.*, 530 F. Supp. 2d 1084
(C.D. Cal. 2008) ...............................................................................1

*Warren v. Wasserman, Comden & Casselman*,
220 Cal. App. 3d 1297 (1990) ......................................................12

-iii-

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO
STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

_Well Go USA, Inc. v. Unknown Participants in Filesharing Swam Identified by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB_, 2012 WL 4387420 (S.D. Tex. Sept. 25, 2012) ........................................................13

_Williams v. Williams_, 23 N.Y.2d 592 (NY Ct. App. 1969) ......................................7

_Woodcourt II Limited v. McDonald Co._, 119 Cal. App.3d 245 (1981)...............7, 11

**Statutes**

17 U.S.C. § 301 ........................................................................................................21

17 U.S.C. § 512........................................................................2, 12, 13, 15, 19, 22

29 U.S. § 1140...........................................................................................................21

47 U.S.C. § 227 ..........................................................................................................1

Cal. Civ. Code § 47(b) ............................................................................................24

**Treatises**

Restatement 2d. (Torts) § 682...................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................25

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

# I.   <u>INTRODUCTION AND SUMMARY</u>

Although state law rules such as California's anti-SLAPP law and litigation privilege normally should be observed by federal courts sitting in diversity, such state law rules have no application to claims arising under federal law.  *See, e.g., Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"); *Restaino v. Bah (In re Bah)*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (holding that the anti-SLAPP statute does not apply to federal claims); *Summit Media LLC v. City of L.A.*, 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008) (Lew, J.) ("[T]he [state] anti-SLAPP statute does not apply to federal question claims in federal court because such application would frustrate substantive federal rights."); *Oei v. N Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1098 (C.D. Cal. 2006) (Morrow, J.) ("It is well settled that the Supremacy Clause of the United States Constitution grants Congress the power to preempt state and local laws. [Citation.  As a result, it is equally well settled that the California litigation privilege does not apply to federal causes of action, including FDCPA claims.")

Here, this Court sits in exercise of federal question jurisdiction, because the first claim for violations of the Telephone Consumer Protection Act ("TCPA")[1] is clearly federal, and the second claim for abuse of process is also pled as "arising under" federal law.  First Amended Complaint ("FAC") (ECF No. 22) at ¶¶ 19-21. Although California law "creates [Plaintiff's] cause of action" for abuse of process, the cause of action still "arise[s] under the laws of the United States" because the FAC "establishes that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."  *See* FAC ¶ 20; *quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983); *accord Food Lion, Inc. v. United Food &*

---

[1] The TCPA (47 U.S.C. § 227) claim has not been challenged on the pleadings.

1

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

_Commercial Workers Int'l Union_, 1993 WL 410024 at *2, 1993 U.S. Dist. LEXIS 14669, (D. S.C. July 21, 1993) (holding that abuse of process claim arose under federal law because it required the court to analyze ERISA § 510 in order to determine whether prior proceedings amounted to an abuse of process).

More specifically, this Court is now being asked to decide (arguably, for a second time)[2] the very federal question that Rightscorp[3] has spent the last 2-3 years trying to avoid: the (im)propriety of issuing DMCA Section 512(h)[4] subpoenas to "conduit" ISPs.  Rightscorp and the other defendants abused the _federal_ legal process, by issuing 140+ _federal_ subpoenas, which were clearly invalid under _federal_ precedents[5] applying a _federal_ statute on a subject (copyright) where _federal_ law is meant to preempt the field.  Moreover, Rightscorp knew the subpoenas it was issuing were invalid under existing law.  _See_ RFJN B at 9-10 (October 2012 motion to quash Rightscorp subpoena explaining that DMCA subpoenas cannot be issued to conduit ISPs); RFJN F at 8-10 (September 2014 motion to quash Rightscorp subpoena explaining same thing).  Yet, when it was presented with opportunities to argue for a change in controlling federal law, Rightscorp repeatedly declined to do so, preferring instead to retreat in the face of any opposition, so as to live another day and keep on issuing sham DMCA subpoenas.  RFJN B at 38 (2012 notice that Rightscorp did not oppose Telscape's motion to quash); RFJN F at 95 (email from

---

[2] _See_ Notice of Related Cases filed in this action (ECF No. 4); _see also_ the accompanying exhibits to the Request for Judicial Notice ("**RFJN**") B at 40.

[3] There are actually two "Rightscorp, Inc." defendants.  One is a Delaware entity and the other a Nevada entity.  They are referred to herein collectively as "**Rightscorp**".

[4] 17 U.S.C. § 512 was added to the Copyright Act in 1996 as part of the Digital Millennium Copyright Act ("**DMCA**").  Section 512 relates to the so-called DMCA "safe harbors," which protect Internet Service Providers ("**ISPs**") from intermediary liability for copyright infringement, provided they "take down" infringing content.

[5] _See, e.g._, _Recording Indus. Assoc. of Am. v. Verizon Internet Svcs., Inc._, 351 F.3d 1229, 1236-39 (D.C. Cir. 2003) ("**_RIAA_**"); _In re Charter Commc 'ns, Inc._, 393 F.3d 771, 776-78 (8th Cir. 2005) ("**_Charter_**").

2

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

Rightscorp's lawyer Dennis Hawk, "formally withdraw[ing]" Rightscorp's subpoena to Grande on Sep. 8, 2014); RFJN G at 4 (new DMCA subpoena initiated by Dennis Hawk to a conduit ISP, the very next day, Sep. 9, 2014); RFJN J at 35-41 (Rightscorp withdrawing subpoena on Nov. 21, 2014, after motion to quash).

In sum, plaintiff's second cause of action for abuse of process arises under federal law because it requires the determination of a substantial federal question in dispute between the parties.  Specifically, this Court must decide whether Rightscorp abused the legal process by maliciously issuing 140+ sham subpoenas that were unlawful under federal precedent applying DMCA Section 512(h).  Accordingly, since this Court is exercising federal question jurisdiction only, the California anti-SLAPP law and litigation privilege do not apply and the instant motion must be denied on those grounds.

Finally, even if the anti-SLAPP law did apply, and even if speculative invoicing amounted to protected first amendment activity in connection with a public issue (which it does not), plaintiff still has a reasonable probability of prevailing on the merits.  For evidence that Rightscorp systematically used the DMCA Section 512(h) procedure "for a purpose it was not designed to achieve,"[6] the Court need look no farther than the court records that are the subject of the accompanying request for judicial notice.  RFJN A to L.  For the same reasons, the Rule 12(b)(6) portion of the instant motion must also be denied, because the FAC properly states a claim for abuse of process as to all defendants.[7]

---

[6] California Civil Jury Instruction, No. 1520, "Abuse of Process," at ¶ (2).

[7] Since defendants mainly focus on the anti-SLAPP part of their motion (ECF No. 30-1 at pp. 1-19), the material factual citations in this opposition refer to admissible evidence.  However, the legal arguments are the same under both standards.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Defendant Dennis Hawk, acting "on behalf of Rightscorp and the copyright owners it represents" initiated 142 miscellaneous proceedings in this Court to obtain DMCA Section 512(h) subpoenas.  *See, e.g.,* RFJN A at 4-9; <u>Exhibit D</u> to FAC.

On October 15, 2012, an ISP who received a 'trial balloon' subpoena from Rightscorp, Telscape Communications, Inc. ("**Telscape**") filed a motion to quash. RFJN B at 5-37.  The brief in support of the motion to quash cited to <u>RIAA</u> and <u>Charter</u>, and explained why the subpoena was invalid.  RFJN B at 9-10.  Rightscorp did not oppose the motion.  RFJN B at 38.  Accordingly, on November 8, 2012, this Court issued an order noting that no opposition had been timely filed, so "The Court deems the lack of opposition to be consent to the motion. Local Rule 7-12; *see also* <u>Ghazali v. Moran</u>, 46 F.3d 52 (9th Cir. 1995); <u>Brydges v. Lewis</u>, 18 F.3d 651, 652 (9th Cir. 1993). The motion to quash is GRANTED."  RFJN B at 40.

Starting in early 2014, Rightscorp redoubled its subpoena-issuing efforts, obtaining a variety of new DMCA Section 512(h) subpoenas from the Clerk of this Court.  <u>Exhibit D</u> to FAC.  Included among the subpoenas Rightscorp obtained was one to Imon Communications, LLC (plaintiff John Blaha's ISP) issued May 7, 2014 (RFJN C at 4-7), one to Grande Communications Networks, LLC ("**Grande**") issued August 6, 2014 (RFJN D at 4-7), and one to Greenfield Communications, Inc. on August 14, 2015 (RFJN E at 4-7).

Starting around July of 2014, Mr. Blaha began receiving multiple pre-recorded and/or artificial voice telephone messages to his cellular telephone number, pressuring him to "settle" claims of alleged infringement[8] with Rightscorp.  FAC ¶¶ 56-64.  This was consistent with Rightscorp's business model (RFJN L at 17 *et seq.*)

---

[8] Rightscorp notes repeatedly that Mr. Blaha supposedly "does not dispute" that he infringed the copyrighted material that was the subject of Rightscorp's notices.  Mot. Br. 3:3-5, 4:15-17.  Yes he does.  He just had no reason to do so in the FAC, since that issue is irrelevant to the class claims alleged.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

and with the experience of other putative class members (Original Complaint ¶¶ 37-44) (alleging similar calls made to original lead plaintiff Karen "Jeanie" Reif).

On September 9, 2014, Grande filed a comprehensive motion to quash in the Western District of Texas.  RFJN F at 4-88.  One business day after Grande file this motion, Mr. Hawk wrote Grande's counsel stating,

> "Although we have had considerable success in obtaining compliance by ISP's [*sic*] across the country, it appears that you will counsel your clients to deny our client's requests which we believe are in full compliance with the DMCA.  Accordingly, we will seek alternative remedies available to our client and hereby formally withdraw our subpoena."

RFJN F at 95. Grande then filed an "advisory" to the court apprising it of the withdrawal of the subpoena (RFJN F at 90-96), and the court closed the case (RFJN F at 97).

The next day, Mr. Hawk issued new subpoenas, including one to Birch Communications, Inc. f/k/a CBeyond Communications, LLC ("**CBeyond**").  RFJN G at 4-7.  Mr. Hawk, once again on behalf of Rightscorp and its clients, issued another subpoena to Ellijay Telephone Co. ("**Ellijay**") on October 14, 2014.  RFJN H at 4-7.  Rightscorp continued issuing DMCA subpoenas until November 11, 2014 (just before this case was filed).  RFJN K at 4-7; *see also* Exhibit D to FAC.

On October 17, 2014, CBeyond filed another comprehensive motion to quash (and for sanctions) challenging a Rightscorp subpoena, this time in the Northern District of Georgia.  RFJN I at 7-77.  On November 12, 2014, Ellijay filed yet another motion to quash (and for sanctions) challenging a Rightscorp subpoena, again in the Northern District of Georgia.  RFJN J at 5-34.

On November 20, 2014, Rightscorp and Ellijay agreed to[9], and then on the

---

[9] It appears agreement was reached to withdraw the Ellijay subpoena as of Nov. 20, 2014, per the date on the Certificate of Service attached thereto, but that the document was not actually e-filed until the next day.  *See* RFJN J at 40.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

next day actually did file, a consent motion withdrawing the subpoena and taking the motion to quash and for sanctions off calendar.  RFJN J at 35-41.

On November 21, 2014, this class action lawsuit was then filed naming as defendants both of the Rightscorp entities, as well Rightscorp's officers Christopher Sabec, Robert Steele, and Craig Harmon, and Rightscorp's outside counsel who issued the DMCA subpoenas Dennis J. Hawk.  *See* Complaint, ECF No. 1, at 1.  The original complaint asserted causes of action for violations of the TCPA, abuse of process, and for violations of the Fair Debt Collection Practices Act ("**FDCPA**") and California's Rosenthal Fair Debt Collection Practices Act.  *Id.*

On December 18, 2014, for the first time in any forum, Rightscorp opposed a motion to quash one of its subpoenas, in the <u>*CBeyond*</u> case in Georgia.  RFJN I at 78-104.  According to Rightscorp, the two Circuit Courts of Appeals to have considered the "conduit" ISP issue, which both specifically rejected Rightscorp's position (<u>*RIAA*</u>, 351 F.3d at 1236; <u>*Charter*</u>, 393 F.3d at 776-78) and every district court decision since then, which have all followed those Courts of Appeals, are all wrong.  *See* RFJN I at 139-140 (district court's order quashing subpoena but denying sanctions, noting that "Rightscorp neglects to point out" that the two district court cases it relied upon "were overturned by the court in <u>*RIAA*</u> and do not constitute prevailing legal authority," and that the reasoning of <u>*RIAA*</u> and <u>*Charter*</u> courts has been "uniformly adopt[ed]" by federal district courts since then).

After counsel here met and conferred about various issues in January and February, the complaint was amended, with defendants consent, to drop the FDCPA and Rosenthal Act claims, and the prior lead plaintiffs were also replaced by Mr. Blaha.  In addition, Rightscorp's two largest clients, BMG Rights Management (US) LLC, and Warner Bros. Entertainment Inc. were added as defendants in the amended complaint.  FAC at p. 1.  The instant anti-SLAPP motion (ECF No. 30), as well as a motion to dismiss for lack of personal jurisdiction by defendant Harmon followed.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

# III.  ARGUMENT

**(a)    Elements of the Tort of Abuse of Process**

As once noted by New York's highest court, Dean Prosser described the tort of abuse of process as "'a form of extortion'" and he listed a "'subpoena for the collection of a debt'" as a quintessential example of the kind of thing that can give rise to a claim for abuse of process.  *See Williams v. Williams*, 23 N.Y.2d 592, 596 & fn1 (NY Ct. App. 1969); *quoting* Prosser, Torts [3d ed.], pp. 877-878; *accord* Dobbs, The Law of Torts § 438, pp. 1235-36 (2000) (listing misuse of subpoena as kind of process giving rise to abuse of process claim).  "[T]he essence of the tort lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." *Woodcourt II Limited v. McDonald Co.*, 119 Cal. App.3d 245, 252 (1981).

The Ninth Circuit set forth the elements of a claim for abuse of process under California law as follows,

> "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the judicial process, and (2) committed 'a willful act in the use of th[at] process not proper in the regular conduct of the proceedings.'"

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1037 (9th Cir. 2008), *quoting Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986); *accord Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (same formulation).

To parse what qualifies as "a willful act in the use of [legal] process not proper in the regular course of the proceedings," reference to the Restatement of Torts and California Civil Jury Instructions (which cites the Restatement) are helpful. "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."  Restatement 2d. (Torts) § 682.  That formulation is echoed in California Civil Jury Instruction which puts the

7

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

claim in terms of use of an intentional use of a legal procedure for an "improper purpose that the procedure was not designed to achieve." California Civil Jury Instruction, No. 1520, "Abuse of Process," at ¶ (2).

In a seminal abuse of process case relied upon heavily by defendants, the California Supreme Court followed Prosser and explained,

> "'The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding. Some **definite act** or threat **not authorized by the process**, **or aimed at an objective not legitimate in the use of the process**, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" [emphasis altered].

*Spellens v. Spellens*, 49 Cal. 2d 210, 231 (1957); *quoting* Prosser on Torts, (2d ed.) p. 667; *accord* Ion Equipment Corp. v. Nelson, 110 Cal. App. 3d 868, 876 (1980) ("[A]n improper purpose may consist in achievement. . .of a result not within [the] legitimate scope [of the legal process used].").

Accordingly then, it seems fairly straightforward that the use of a subpoena in a manner that is unauthorized, or that goes beyond the subpoenas "legitimate scope," or for an illegitimate purpose, is an actionable abuse of process. To put it in terms of the plain language of the relevant California Jury Instruction (which is probably the clearest formulation of them all), it amounts to an abuse of process when a subpoena is used for a purpose that it was not designed to achieve. Thus, if Rightscorp obtained and willfully served subpoenas for the ulterior purpose of having "conduit" ISPs identify third parties accused of past infringement, but Section 512(h) does not allow subpoenas to be used for that purpose, a claim for abuse of process is stated. (As explained in the next section, such is precisely the case here.)

In defiance of *Rusheen*, *Spellens*, *Estate of Tucker*, and just about every other authority that has ever addressed the topic, defendants erroneously contend that,

> "the mere utilization of legal process that one is not entitled to invoke

8

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

> does not give rise to a derivative action for abuse of process (Mot. Br. at 9:14-15). . . the relevant inquiry in an abuse of process claim is not whether the process was validly issued, but whether it was abused (*Id.* at 11:8-10)."

Taking this seemingly absurd argument even farther, defendants continue,

> "Plaintiff[] [has a] complete misunderstanding of the elements of a claim for abuse of process under California law.  Whether a party has tortuously [*sic*] abused process hinges on how the party threatened to use the process or misused the process after it was obtained.  ***Whether a party is legally entitled to invoke the process giving rise to the abuse of process claim is legally irrelevant***."  [emphasis altered].

Mot. Br. at 18:22-27.  According to defendants, it is *completely irrelevant* that they had no legal basis to issue the DMCA subpoenas.  That sounds wrong.  And it is.

What seems to have defendants tied up in knots is the fairly straightforward proposition that a claim for abuse of process can arise even where the legal process in question was validly issued.[10]  In such a case, the use of the process only becomes ***tortious*** when there is some quasi-extortionate or otherwise improper action after the issuance of the process.[11]  In such a case, it may well be irrelevant that the legal process was validly issued; the tortious conduct occurs after the legal process is issued.  But it is ***always*** going to be highly relevant to an abuse of process claim if the legal process in question was ***in***validly issued.  In the latter case, the process is potentially tortious *ab initio*; the use of the process is itself the overt act, and the ulterior motive is the improper purpose for which the process is employed.

---

[10] *See, e.g.,* <u>Board of Education of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n</u>, ("***Farmingdale***") 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975) (subpoenas commanding attendance of 87 teachers to appear at first day of trial to be witnesses were validly issued, but claim for abuse of process was properly stated because it was alleged this was done for improper purpose, namely, paralyzing normal operations of the schools).

[11] This is what the <u>Spellens</u> court was getting at in the passage relied upon by defendants.  See Mot. Br. at 9:22-10:16.

9

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

Thankfully, the First Circuit added some clarity on this issue in _Simon v. Navon_, 71 F.3d 9, 15 (1st Cir. 1995).  There, the First Circuit explained that although malicious prosecution is typically only available after a lawsuit ends, and abuse of process claims typically arise after a suit has been properly filed:

> "The abuse tort is given a wider berth, however, and courts typically will recognize such a claim, regardless of timing, if a plaintiff can show an improper use of process 'for an immediate purpose other than that for which it was designed and intended,' Restatement (2d) of Torts § 682, at 475 (1977). See W. Page Keeton, et al., Prosser and Keeton on The Law of Torts § 121, at 898 (5th ed. 1984) (**_cases requiring an act after process has issued 'probably stand only for the narrower proposition that there must be an overt act and that bad purpose alone is insufficient'_**).
>
> Fn 6.  When abuse of process is based on conduct subsequent to initiation of the lawsuit, the requirement of an 'act' of abuse typically would be satisfied by showing use of the individual legal process in an improper manner. _See, e.g.,_ [_Farmingdale,_ 38 N.Y.2d at 343]."

_Simon_, 71 F.3d at 15 & fn6. [Emphasis added].

Here, the DMCA Subpoenas were used for an "immediate purpose other than that for which [the DMCA subpoenas] were designed and intended."  As explained in _Simon_, and by Keeton and Prosser, no more is required to state a claim.  However, even if an additional overt act in furtherance of the improper purpose were required, Rightscorp did overt acts here, repeatedly, when it served the DMCA subpoenas on ISPs, and some of those ISPs made returns on the subpoenas.  _See_ RFJN I at 131, ¶ 3) (sworn declaration from Rightscorp's COO confirming that at least 17 different ISPs made returns, identifying at least 1,224 people, after being served by Rightscorp with DMCA subpoenas).  Further, consistent with the focus of the Rightscorp business model, after obtaining personal and transactional information for putative class members, Rightscorp began contacting those people to pressure them to enter into "settlements." _See_ RFJN L at 17, et seq. (investor presentation filed with SEC, explaining that Rightscorp's whole business model involves pressuring alleged infringers to pay "settlements").  The ulterior motive is essentially

10

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

written into Rightscorp's business plan.  In short, Rightscorp has "misuse[d] the [subpoena] power of the court[, in] an act done in the name of the court and under its authority for the purpose of" extorting people to pay $20 settlements.  *See Woodcourt II*, 119 Cal. App.3d at 252.

Defendants next argue that a claim for abuse of process may never arise in response to discovery abuse and that the DMCA subpoenas issued were mere discovery instruments, which is also flatly incorrect on both counts.  First, the clerk-stamped, claim-initiating DMCA subpoenas Rightscorp issued and then served here are no mere discovery items; they were issued by and bore the seal of this Court. *See, e.g.*, Exhibit RFJN A at 5.  Second, it is actually fairly well-settled that misuse of both subpoenas and other discovery mechanisms may give rise to claims for abuse of process.  *See, e.g.*, *Gonzalez-Rucci v. United States INS*, 539 F.3d 66, 71 (1st Cir. 2008) ("abuse of process claims 'typically cover [] challenges to the legal action's procedural components,' such as subpoenas or discovery mechanisms."); *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 310 (3d Cir. 2003) ("the word process. . .includ[es] discovery proceedings, the notice of depositions and the issuing of subpoenas.");  *Bidna v. Rosen*, 19 Cal. App. 4th 27, 40 (1993) ("abuse of process claims typically arise for improper or excessive attachments or improper use of discovery.")

To arrive at their faulty conclusion, defendants misread *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 907 (E.D. Cal. 2006) (Wanger, J.).  Here is the whole relevant passage in context:

> "These conclusory allegations are insufficient to establish that the Fike Defendants willfully used 'process not proper in the regular conduct of the proceedings.' At most, they suggest a violation of civil discovery rules. Such a violation, ***on its own***, does not constitute an abuse of process. Moreover, there were adequate remedies to enforce the discovery rules in the prior case. It is impermissible to sue for prior violations of discovery rules in a subsequent lawsuit. There are any number of legitimate (i.e., not improper) reasons why documents

11

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

initially not disclosed might later be provided in discovery. This is the nature of civil litigation."

*Id*. [Emphasis added]. The *Flores* court was correct insofar as discovery violations *alone* do not automatically create a claim for abuse of process. But it is equally clear that where a subpoena or discovery violation of some sort is coupled with an improper purpose or other overt act—which were absent in *Flores*—then a claim for abuse of process will indeed lie. Neither *Flores*, nor the other inapposite case relied upon by defendants,[12] should be read to suggest otherwise.

**(b)   Per "Uniformly Adopted" Federal Precedent, Rightscorp Used the DMCA Section 512(h) Subpoena Procedure For a Purpose It Was Not Designed to Achieve**

As noted above, the key question in evaluating plaintiff's claim for abuse of process is whether Rightscorp used the 140+ DMCA Section 512(h) subpoenas for a purpose they were not designed to achieve. On this point, the valid "uniformly adopt[ed]"[13] federal legal precedents are remarkably clear: what Rightscorp has been doing (systematically, one might add) is contrary to the purpose of 17 U.S.C. § 512(h) and has never been allowed.

While interpretation of Section 512(h) was once an interesting question of first impression, things have been well-settled for a decade, since *RIAA* and *Charter* were decided by the Courts of Appeals. *See Recording Indus. Assoc. of Am. v. Verizon Internet Svcs., Inc.*, 351 F.3d 1229, 1236-39 (D.C. Cir. 2003) ("*RIAA*") (Section 512(h) inapplicable where Internet service provider acted as conduit for alleged peer-to-peer file sharing between Internet users); *In re Charter Commc'ns,*

---

[12] Defendants also cite to *Warren v. Wasserman, Comden & Casselman*, 220 Cal. App. 3d 1297, 1301 (1990), but that case merely held that because the plaintiff's claim for abuse of process "is based on the premise that the continued prosecution of the underlying action was the misuse of process," which is malicious prosecution, not abuse of process, so "the court correctly sustained the demurrer." *Id.*

[13] RFJN I at 140 (order from N.D. Ga. quashing Rightscorp DMCA subpoena).

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

*Inc.*, 393 F.3d 771, 776-78 (8th Cir. 2005) ("*Charter*") (finding that Section 512(h) does not authorize the issuance of subpoenas to ISPs acting as mere conduits for communications between Internet users and vacating order issued by district court enforcing improperly issued Section 512(h) subpoenas); *In re Subpoena to Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945, 952-53 (M.D. N.C. 2005) (following *RIAA* and *Charter*); *Interscope Records v. Does 1-7*, 494 F. Supp. 2d 388, 391 (E.D. Va. 2007) (same); *Maximized Living, Inc. v. Google, Inc.*, 3:11-mc-80061, 2011 WL 6749017 at *5-6, 2011 U.S. Dist. LEXIS 147486 (N.D. Cal. December 22, 2011) (same); *Well Go USA, Inc. v. Unknown Participants in Filesharing Swam Identified by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB*, 4-12-cv-963, 2012 WL 4387420 at *1, 2012 U.S. Dist. LEXIS 137272, (S.D. Tex. Sept. 25, 2012) (same); *In re Subpoena Issued to Birch Communications, Inc. f/k/a CBeyond Communications, LLC*, N.D. Ga. No. 1:14-cv-3904, 1/16/15, RFJN I at 139-140 (quashing subpoena, noting that reasoning of *RIAA* and *Charter* has been "uniformly adopt[ed]" in all the subsequent decisions, and that Rightscorp relies on no "prevailing legal authority" at all to supports its argument).

Aside from *RIAA* and *Charter* themselves, perhaps the most helpful treatment of the topic comes from Magistrate Judge Laporte of the Northern District of California in *Maximized Living*.  Following *RIAA* and *Charter*, the court held,

> "***that § 512(h) does not authorize issuance of a subpoena to obtain the identifying information as to past infringement*** in light of the plain language and purpose of the DMCA, especially its 'notice and take-down provisions' to which the subpoena power is integrally related. . .
>
> This Court agrees with the reasoning of *RIAA* and holds that the subpoena power of § 512(h) is limited to currently infringing activity and does not reach former infringing activity that has ceased and thus can no longer be removed or disabled. Most importantly, the plain language of the statute describes notification requirement strictly in the present tense: 'Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled.' § 512(c)(3)(A)(iii)

13

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

[emphasis omitted]. Further, past infringing activity that has been removed by the infringer cannot be susceptible to the notice and take down provisions of the DMCA. _RIAA_, 351 F.3d at 1237."

_Maximized Living, Inc. v. Google, Inc._, _supra_, at *15-16 [emphasis altered].

Ignoring these precedents, defendants contend that "it is absurd to suggest that Defendants use of DMCA subpoenas to identify anonymous infringers is misuse of Section 512(h)." Mot. Br. At 10:20-22.  In support of their position, defendants cite to precisely one district court case construing Section 512,[14] which is inapposite, because it deals with a non-"conduit" ISP, and to the _Charter_ dissenting opinion, which has been unfalteringly rejected over the ten years since _Charter_ was decided.

The principal case relied upon by defendants, _Signature Mgmt._, is actually a good example of the kind of situation where a DCMA Section 512(h) subpoena _would_ be appropriate, because it involved an ISP that was hosting content still available online.  _Signature Mgmt._, 941 F. Supp. 2d at 1152.  The ISP subpoena recipient defendant in that case, Automattic, Inc., is the company that runs the popular Wordpress blogging platform, which makes thousands (if not millions) of different web pages accessible to the public via the Internet.[15]  _See id_. at 1148.  The real party in interest was an unknown person using the pseudonym "Amthrax," who managed a Wordpress blog/website which contained speech sharply critical of Signature Mgmt. and which also displayed and made available a digital version of a copyrighted textbook owned by Signature Mgmt.  _Id_.  Accordingly, _Signature Mgmt._ is inapposite, because there the ISP, Automattic, had the power to "take down" disputed content which was still available online at the Wordpress blog; in other words, the ISP was not a mere "conduit" for already-concluded data transmissions.

What Rightscorp has done here is not new; the RIAA tried the exact same thing in the early 2000's.  Specifically, the RIAA issued DMCA Section 512(h)

---

[14] Mot. Br. 10:23; _quoting_ _Signature Mgmt. Team, LLC v. Automattic, Inc._, 941 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013) ("__Signature Mgmt.__") (Spero, MJ).

[15] See http://en.wikipedia.org/wiki/WordPress

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

subpoenas to ISPs in an effort to try and identify Internet users who could then potentially be sued for copyright infringement based on their alleged use of file sharing software to infringe on copyrighted content.  But the D.C. Circuit said 'no' to that plan in _RIAA_.   As explained by Judge Laporte, and as Rightscorp has argued again here,

> According to the RIAA, the purpose of § 512(h) being to identify infringers, a notice should be deemed sufficient so long as the ISP can identify the infringer from the IP address in the subpoena. 351 F.3d at 1236. The court of appeals rejected this broad reading of the statute, finding that 'the defect in the RIAA's notification is not a mere technical error; nor could it be thought 'insubstantial' even under a more forgiving standard.' Id. The court held: 'The RIAA's notification identifies absolutely no material Verizon could remove or access to which it could disable, which indicates to us that § 512(c)(3)(A) concerns means of infringement other than P2P file sharing.' _Id_. . ..
>
> In _In re Charter Communications, Inc., Subpoena Enforcement Matter_, 393 F.3d 771, 776-77 (8th Cir. 2005), the Eighth Circuit agreed with the D.C. Circuit on the issue of whether § 512(h) authorizes a subpoena on an ISP which only transmits, but does not store, the allegedly infringing material. . .
>
> The court reasoned that '[t]he absence of the remove-or-disable-access provision (and the concomitant notification provision) [in the safe harbor provision of § 512(a)] makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material.' _Id_. at 776 (emphasis added). ***The Eighth Circuit agreed with _RIAA_ to hold held that a copyright owner may not request a § 512(h) subpoena for an ISP which merely acts as a conduit for P2P file-sharing***. _Id_. at 776-77."

_Maximized Living, Inc. v. Google, Inc._, _supra_, at *13-16 [emphasis altered].

Thus, the argument Rightscorp makes in its brief here as to Section 512(h) supposedly having a broadly-defined purpose of "identifying infringers," (Mot. Br. 10:21-22), is the same exact same argument that the RIAA made and the D.C. Circuit rejected in _RIAA_.

15

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

The bottom line is that every federal court to have looked at the issue since *RIAA* and *Charter* has "uniformly adopt[ed]" the reasoning of those cases. RFJN I at 140. Thus, as made clear in these precedents, the "legitimate scope" or "ordinary purpose" of a DMCA 512(h) subpoena is substantially narrower than what Rightscorp and the RIAA would prefer. The "purpose" this sort of legal process was "designed to achieve" is the scenario illustrated in *Signature Mgmt.,* 941 F. Supp. 2d at 1152, namely identification of alleged infringers *in aid of getting an ISP that is still hosting or otherwise storing content to take that content down.* The different and illegitimate "purpose" that Rightscorp has used these subpoenas to achieve is identification of alleged infringers *who supposedly participated in past instances of file sharing of content that the ISPs have no way to "take down."* To achieve the latter objective, copyright owners, such as Rightscorp's clients, already have a remedy: they can file complaints for infringement against John Does and then seek leave to conduct early discovery on the ISPs. But they cannot use Section 512(h).

The question of whether DMCA Section 512(h) subpoenas can be used to combat file sharing may have been tough in the early 2000's; however, this issue has been settled in a string of "uniform" federal precedents for at least a decade.

**(c)** **Rightscorp *Knew* it was Systematically Violating Section 512(h) and Abusing this Court's Subpoena Power, as Evidenced by the Way it Beat a Hasty Retreat in the Face of the ISPs' Motions to Quash**

In response to what must have been a 'trial balloon' subpoena issued by Rightscorp early on (RFJN A at 4-9), Telscape filed a strong motion to quash in October of 2012, laying the foregoing issues out before this Court (RFJN B at 5-37). Presumably in order to avoid making adverse precedent in its home jurisdiction that could put Rightscorp out of business, the company declined to oppose that motion (RFJN B at 10). Rightscorp did not, however, withdraw the subpoena, so this Court granted the motion to quash based on Rightscorp's consent thereto (RFJN B at 12). So, although Rightscorp was probably trying to avoid an adverse adjudication, it

16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

1   seems to have perhaps inadvertently created one from this Court nonetheless. *See id.*

2       A similar thing then happened in September of 2014 (about 3/4 of the way

3   through Rightscorp's campaign of issuing 140+ DMCA subpoenas) when Grande,

4   an ISP in Texas, filed another strong motion to quash (RFJN F at 4-88) a DMCA

5   subpoena Rightscorp had previously obtained from this Court and served on Grande

6   (RFJN D at 2-7).  One business day after this motion to quash was filed,

7   Rightscorp's counsel, Mr. Hawk withdrew the subpoena.  RFJN J at 90, 95.

8   Rightscorp's counsel may have written in an email not subject to Rule 11 that the

9   company believed it is in "full compliance with the DMCA."  But what really speaks

10  volumes is that Rightscorp withdrew its subpoena so quickly.

11      By this point, at least, in view of the "uniform" federal precedent going

12  against them, and their demonstrated aversion to seeking a change in this precedent,

13  an objectively reasonable litigant would have stopped issuing DMCA subpoenas.

14  Not Rightscorp though; Mr. Hawk was back at it the very next day, September 9,

15  2014, issuing new DMCA subpoenas to various new ISPs.  *See, e.g.*, RFJN G at 2-7;

16  Exhibit D to FAC (list showing dates of all Rightscorp DMCA subpoenas; 38 new

17  subpoenas were issued out of this Court after September 8, 2014).

18      Rightscorp now complains that plaintiff is attempting to "chill Rightscorp's

19  efforts to ask the courts outside the Eighth and D.C. Circuits to adopt an

20  interpretation of the DMCA that allows for issuance of subpoenas to conduit service

21  providers."  Mot. Br. At 12:5-7.  First, where is the evidence that Rightscorp ever

22  undertook any such "efforts" prior to the filing of this suit,[16] to "ask" any court to

23

---

24  [16] Defendants disingenuously claim that "Rightscorp has previously opposed

25  motion**s** to quash on this very basis and has not been found to have acted
    unreasonably in doing so. ***For example***, in *In Re Subpoena to Birch

26  Communications, Inc.*, N.D. Ga. Case No. 1:14-cv-03904-WSD. . ."  Mot. Br. at

27  11:23-26 [emphasis added].  As far as plaintiff is informed, Rightscorp opposed only
    *one* motion to quash, in that Georgia case, but only after first becoming aware that

28  this class action had been filed.  When the Georgia court declined to impose

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO
STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

depart from a decade of "uniformly applied" precedent barring the issuance of DMCA subpoenas to conduit ISPs?  What the evidence here actually shows is that when Rightscorp was presented with three opportunities to do just that, in the form of the motions to quash filed by three different ISPs, it affirmatively waived its right to press this legal issue.  RFJN B at 10-12; RFJN F at 90, 95; RFJN J at 35-41.  The clear inference is that Rightscorp was fairly obviously trying to *avoid* an adjudication on this legal issue, because all of the "uniformly appl[ied]" valid legal precedent is 100% fatal to Rightscorp's business model.  The old saw that it is sometimes better to beg forgiveness than to ask permission may be true in certain circumstances.  But it should have no application when it comes to the issuance of federal subpoenas; particularly subpoenas issued using a special, *ex parte*, non-adversarial procedure that is devoid of judicial review[17].  Rightscorp chose to subpoena information for thousands of people and take its chances begging forgiveness.  So it should not now be heard to complain that the inevitable reckoning, in the form of a class-wide claim for abuse of process, unduly constrains its ability to have asked for permission.

The defendants next attempt to justify Rightscorp's issuance of the unlawful 140+ DMCA subpoenas as "zealous advocacy."  Mot. Br. 12:17-28.  Zealous advocacy is one thing, and should rightly be safeguarded.  However, beating a hasty retreat at the first sign of any kind of organized opposition, so as to live on and issue

---

sanctions by concluding that Rightscorp had a reasonable position, Rightscorp's history of actively avoiding adjudications was not part of the factual record the court considered.  *See* RFJN I at 136-37.

[17] It is for these reasons, as well as concerns regarding nationwide personal jurisdiction, and the fact that DMCA Section 512(h) subpoenas are issued apart from any justiciable claim or controversy, that certain ISPs challenged Section 512(h) as unconstitutional.  Since the *Charter* court found for the ISPs on the "conduit" issue and quashed the subpoenas then pending, the constitutionality issue was never reached, although the *Charter* court seemed to hint that Section 512 may be unconstitutional.  For a more in-depth look at this issue, see RFJN I at 17-18.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

new (equally invalid) subpoenas on another day, is something else entirely.  Such tactics have arisen before in cases involving plaintiffs (sometimes referred to as "copyright trolls") engaged in industrial-scale copyright enforcement.  Judge Gibney of the Eastern District of Virginia confronted a similar issue in an infringement case filed against multiple John Doe defendants in 2011,

> ". . . .When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution.
>
> This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits.
>
> The plaintiffs' conduct in these cases indicates an improper purpose for the suits."

_K-Beech, Inc. v. Does 1-85_, 2011 WL 10646535 at *2-3, 2011 U.S. Dist. LEXIS 124581 (E.D. Va., as amended Oct. 13, 2011).  So too here: each time a motion to quash was filed by an ISP, Rightscorp would simply "drop" that particular subpoena "in order to avoid an actual decision on the merits" as to the propriety of issuing Section 512(h) subpoenas to ISPs acting as conduits.

Another argument defendants make repeatedly—and quite disingenuously — is that plaintiff's "sole" remedy to combat Rightscorp's abusive subpoenas was to file a motion to quash.  As alleged in the FAC, Mr. Blaha never received notice or an opportunity to respond to the DMCA subpoena Rightscorp issued to his ISP, Imon Communications.  FAC ¶ 56.  This is because Rightscorp relied upon 17 U.S.C. § 512(h)(5) to systematically pressure ISPs to make "expeditious" returns on

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

subpoenas, which apparently resulted in ISPs, whose personnel did not know any better, making returns on subpoenas (RFJN I at 131, ¶ 3) without first notifying their customers that the subpoenas were pending.

Defendants also argue that "until the Ninth Circuit or a court in this district decides otherwise, Rightscorp may properly advocate for issuance of a DMCA subpoena against conduit ISPs in the Central District."  Mot. Br. At 13:4-6.  What defendants neglect to mention is that "a court in this district,"—in fact, this very Court—has indeed already "decided otherwise."  RFJN B at 40.  In October of 2012, when Telscape filed its motion to quash in this Court, Rightscorp had its opportunity to argue that a decade of uniformly applied federal precedent ought to be abandoned. That argument would have been a loser then (as it remains a loser now), if it had indeed been "properly advocate[ed]" by Rightscorp back in 2012.  Yet, in the face of Telscape making many of the same arguments repeated again now, Rightscorp waived its arguments.  As a result, there *has* been an order from this Court quashing the exact same kind of subpoena that Rightscorp then turned around and started issuing *en masse* in 2014.

**(d)   Since a Determination as to the Purpose of DMCA Section 512(h) is an Essential Element of the Abuse of Process Claim Alleged Here, this Claim "Arises Under" Federal Law**

However this Court ultimately adjudicates the question of whether Rightscorp issued DMCA Section 512(h) subpoenas for a purpose they were not designed to achieve, the one thing that is absolutely certain is that the answer to that question depends 100% on federal law.

Thus, as in the case of *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 1993 WL 410024 at *2, 1993 U.S. Dist. LEXIS 14669 (D. S.C. July 21, 1993) the abuse of process claim here "arises under" federal law, even though state law creates the cause of action.  In *Food Lion*, the defendant had made statements in an underlying litigation that "Food Lion engaged in a company-wide

20

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

scheme, pattern and practice of discharging employees to prevent their vestment in the profit-sharing plan." *Id.* at *2. Accordingly, Food Lion sued for abuse of process, alleging that these statements were demonstrably false. The court concluded that to adjudicate whether these statements made in the prior proceeding amounted to an abuse of process, it would have to interpret ERISA § 510 (codified at 29 U.S. § 1140) (making it unlawful to retaliate against a plan participant or beneficiary for taking actions authorized under the plan, or for him or her giving testimony about the plan in a court proceeding). *Food Lion, supra,* at *2. Like the Copyright Act, ERISA is another subject where federal law is meant to preempt the field. *See, e.g., Richmond v. American Systems Corp.,* 792 F. Supp. 449, 456 (E.D. Va. 1992) (ERISA preemption); 17 U.S.C. § 301 (Copyright Act preempts state claims). Accordingly, the court found that "a determination under ERISA § 510 is an essential element of the abuse of process claim as presented in this complaint," so it concluded the cause of action arose under federal law and removal on the basis of federal question jurisdiction was proper. *Food Lion, supra,* at *2.

Relying almost entirely on *Berisic v. Winckelman*, 2003 WL 21714930, at *2 (S.D.N.Y. July 23, 2003) (S.D.N.Y. No. 03-cv-1810), defendants argue that the abuse of process claim does *not* arise under federal law (Mot. Brief at 17-18); but that case is easily distinguished. There, Mr. Berisic sued a licensed process server for allegedly lying in an affidavit of service that he signed reciting that he had personally served Berisic in connection with a prior federal case where Berisic was a defendant who defaulted. *Id.* After the defendants in the subsequent action sought to remand, Berisic argued that his claim against the process server for abuse of process arose under federal law because the process server's oath was sworn in accordance with Fed. R. Civ. P. 4. *Berisic*, *supra*, at *2-3. The court—quite correctly—disagreed that such a claim arose under federal law, noting that the process server was not a party in the original federal action and that "the analysis of whether defendant's conduct was tortious and ill-motivated in no way requires a

21

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

construction of any federal statute, practice or procedure." *Id.*

Here, by contrast, determining whether Rightscorp's systematic issuance of DMCA Section 512(h) subpoenas was tortious does indeed require construction of the "purpose" of a federal statute, namely, 17 U.S.C. § 512(h) *et seq.* Further, in order to evaluate Rightscorp's maliciousness in issuing these DMCA subpoenas and the thus the propriety of punitive damages, it is necessary to consider the three prior federal cases where Rightscorp declined to argue that its business model was justified or that the law should be changed. *See* RFJN B at 9-10, 38 (Oct. 2012 motion in C.D. Cal.), RFJN F at 8-10, 90-95 (Sep. 2014 motion in W.D. Tx.); RFJN J at 9-12, 35-41 (Nov. 2014 motion in N.D. Ga.).

Thus, *Berisic* is inapposite, and the better analogue is *Food Lion*, where the U.S. District for South Carolina found that an abuse of process claim did arise under federal law, because considering it required the court to analyze certain provisions of federal ERISA law. *Food Lion*, *supra*, at *2.

**(e)    Since Diversity Jurisdiction Has Not been Invoked, and the Abuse of Process Claim Arises Under Federal Law, California's State Anti-SLAPP Law and Litigation Privilege Do Not Apply**

Since the abuse of process claim arises under federal law, and this Court is exercising only federal question jurisdiction, as a matter of federalism first principles, California's anti-SLAPP law and litigation privilege do not apply. *See, e.g., Hilton*, 599 F.3d at 901 ("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"); *Oei*, 486 F. Supp. 2d at 1098 ("It is well settled that the Supremacy Clause of the United States Constitution grants Congress the power to preempt state and local laws. [Citation]. As a result, it is equally well settled that the California litigation privilege does not apply to federal causes of action, including FDCPA claims.")

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

**(f)    Even if the Anti-SLAPP Law Did Apply, Defendants Have Failed to Meet Their Burden of Showing that Speculative Invoicing Arises from Protected First Amendment Activity "in Connection With a Public Issue"**

Defendants make no attempt at all to argue that this case arises out of protected first amendment activity *in connection with a public issue.* There is no authority plaintiff is aware of that might suggest that making unlawful robo-calls demanding "settlements" of unproven claims for copyright infringement is a matter of public concern, as opposed to a private dispute between the copyright owner and alleged infringer. Accordingly, plaintiffs have failed to carry their burden on the first prong of the test, so the analysis would not proceed to the second prong where plaintiff would have the burden to present evidence. *Gallimore v. State Farm Fire & Cas. Ins. Co.*, 102 Cal. App. 4th 1388, 1396 (2002)  ("[T]he plaintiff ... has no obligation to demonstrate [a] probability of success if the defendant fails to meet [its] threshold burden [at the first step].").

**(g)    Even if the Anti-SLAPP Law Did Apply, And Speculative Invoicing Was a "Public Issue," The Motion Should Still be Denied Because Plaintiff Has a Reasonable Probability of Success on the Merits**

Even if the anti-SLAPP law did apply to speculative invoicing, plaintiff has asked the Court to take judicial notice of sufficient admissible evidence in the form of court records, to tell the whole tale of Rightscorp's abuse of this Court's subpoena power. Plaintiff has a reasonable probability of success on the merits because there is no denying that Rightscorp issued subpoenas for a purpose other than what they were designed to achieve, and that Rightscorp knew, based on the motions to quash it did not oppose, that it was abusing this procedure and violating people's rights. RFJN B at 9-10, 38 (Oct. 2012 motion in C.D. Cal.), RFJN F at 8-10, 90-95 (Sep. 2014 motion in W.D. Tx.); RFJN J at 9-12, 35-41 (Nov. 2014 motion in N.D. Ga.).

Moreover, California's litigation privilege does not apply to the unlawful robo-calls and other extortionate communications made to the putative class members, because such communications were private and made outside of any

23

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

judicial proceedings.  *See* Cal. Civ. Code § 47(b).

In a highly analogous case where a defendant, who was accused of making unlawful debt collection phone calls in which debtors were threatened with collection suits, asserted the litigation privilege, Magistrate Judge Spero of the Northern District of California found that California's litigation privilege did not apply. *Bautista v. Hunt & Henriques*, 2012 WL 160252 at *6-7, 2012 U.S. Dist. LEXIS 5009 (N.D. Cal. Jan. 17, 2012).  As explained by Judge Spero, in *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 35 n. 10 (1997), the California Court of Appeal,

> "delineated the outer bounds of California's litigation privilege.  The court concluded that the litigation privilege does not attach unless the privileged communication has some relation to an *imminent* lawsuit or judicial proceeding. Reviewing the Restatement of Torts and California case law interpreting § 47, the court explained that 'privileged communication must have some relation to an imminent lawsuit or judicial proceeding which is *actually* contemplated seriously and in good faith to resolve a dispute, and not simply as a tactical ploy to negotiate a bargain.' [*Edwards*, 53 Cal. App. 4th] at 36 (emphasis in original). The court held that 'the privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining a settlement.' *Id*."

*Bautista*, *supra*, at *6.  Accordingly, Judge Spero concluded that since the unlawful / allegedly privileged debt collection phone calls at issue in the case before him had occurred nine months before a collection suit was eventually filed, suit was not "imminent" when the calls were made, so the calls were not privileged.  *Id*. at *7.

Here, as noted, even though Rightscorp has routinely threatened class members with suit for copyright infringement, these threats were made "merely as a means of obtaining a settlement," and no follow-up infringement lawsuits were ever filed by Rightscorp. As for Rightscorp's clients, who may be the more proper

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**

plaintiffs in an infringement suit, as far as plaintiff and his counsel are aware, the same is also true; none of them sued any class members for infringement either.  In any event, defendants cannot show that these threats were made in good faith, or that suits were "imminent" when their unlawful robo-calls were made.

**(h)    The First Amended Complaint States a Plausible Claim for Abuse of Process as to All Defendants, so Dismissal Per Fed. R. Civ. P. 12(b)(6) Would Also Be Erroneous**

No defendant other than Craig Harmon asserts an individualized defense to the claims in this case.  (Harmon's personal jurisdiction motion is addressed in a separate opposition.)  The FAC contains proper vicarious liability, agency, alter-ego, conspiracy, and market-share liability allegations as to each of the defendants other than Rightscorp.  FAC ¶¶ 99-101.  Accordingly, for the reasons explained above, and after accepting the facts in the FAC as true and drawing inferences in favor of plaintiff, a Rule 12(b)(6) motion must be denied because a valid claim for abuse of process is stated as to all defendants.

## II.   CONCLUSION

For all of the foregoing reasons, plaintiff respectfully requests that the instant anti-SLAPP special motion to strike and to dismiss (ECF No. 30) be denied.

Respectfully submitted,

DATED: April 13, 2015

THE PIETZ LAW FIRM

*/s/ Morgan E. Pietz*
_____

Morgan E. Pietz

*Attorneys for Plaintiff John Blaha,
individually and on behalf of others similarly situated*

25

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE AND TO DISMISS THE SECOND CAUSE OF ACTION**